## Gross Income Tax Division, State of Indiana *v.* Fort Pitt Bridge Works.

[No. 28,476. Filed June 30, 1949.
Rehearing denied September 22, 1949.]

*Cleon H. Foust* and *J. Emmett McManamon,* Attorneys General, and *Eugene M. Fife, Jr., John J. McShane, Lloyd C. Hutchinson,* and *Edward L. Hamilton,* Deputy Attorneys General, for appellant.

*McHale, Patrick, Myers & Cook,* of Indianapolis; and *Alex. A. Garroway,* of Pittsburgh, Pennsylvania, for appellee.

YOUNG, J.—This action was instituted by the appellee against the appellant to recover money previously paid by appellee under the Indiana Gross Income Tax law. The taxes for which a refund was sought were paid for the years 1939, 1940, 1941, and from January 1, 1942, to September 30, 1942. It was and is appellee's theory that the assessment and collection of the taxes involved violated the Fourteenth Amendment to the Constitution of the United States in that it deprived appellee of its property without due process of law and abridged the privileges and immunities guaranteed by the Constitution of the United States, and that the assessment and collection of the taxes in question have imposed an unreasonable burden upon interstate commerce in violation of the interstate commerce clause of the Constitution of the United States.

The case was tried and evidence was heard and there was a judgment in favor of the plaintiff and against the defendant in the sum of $19,325.25, plus interest. The appellant filed a motion for a new trial, alleging that the decision of the court was not sustained by sufficient evidence and was contrary to law. This motion was overruled and the case is here upon alleged error in such ruling.

The appellee (hereinafter called Fort Pitt) is a Pennsylvania corporation, with its principal office and place of business in the City of Pittsburgh, in that state. It has never been admitted as a foreign corporation to do business in Indiana and has never had any residence or business location or agent in the State of Indiana. The Youngstown Sheet & Tube Company (hereinafter called Sheet & Tube) is a corporation organized under

the laws of the State of Ohio, with its principal office situated in the City of Youngstown, in that state. At all times involved in this case, it was qualified to do business in the State of Indiana, as a foreign corporation. At all times here involved, it owned and operated a plant for the manufacture of steel products in the City of Indiana Harbor, State of Indiana. Hunter Construction Company (hereinafter called Hunter) is a corporation, organized under the laws of the State of Ohio, with its principal office in the City of Youngstown, in that state, and it has been admitted and is qualified to do business in the State of Indiana, as a foreign corporation. Hunter, during all times material to this action, has been engaged in the general contracting business. During all the time involved in this action, Fort Pitt has been engaged in the business of fabricating structural steel and in erecting bridges, buildings and other works in which structural steel forms a substantial portion of the material employed.

Hunter had very friendly business relations with Sheet & Tube and for several years there had been a working agreement between Fort Pitt and Hunter, that when Sheet & Tube was on the market for fabricated steel, and the erection thereof, Hunter would figure the erection cost and Fort Pitt would figure the cost of the fabricated steel, and a single bid for the entire job would be submitted in the name of one or the other of the parties to this arrangement, and if such bid should be accepted then Fort Pitt would furnish the steel and receive the amount included in the total price for the steel, and Hunter would do the wrecking, construction and erection work and receive the amount included in the total bid price for that part of the job.

In 1938, Sheet & Tube contemplated the wrecking of certain buildings used by them at their plant in Indiana

Harbor and the erection of new buildings. Pursuant to their working agreement, Hunter and Fort Pitt collaborated in submitting a bid to furnish, fabricate and erect the steel necessary for the new buildings at Indiana Harbor and erect same. The bid was submitted in the name of Fort Pitt. Their bid was orally accepted by Sheet & Tube and thereafter purchase orders were issued by Sheet & Tube to Fort Pitt for the fabricated steel and the erection thereof. These orders were all directed to Fort Pitt. In the execution of these orders, Fort Pitt furnished and fabricated the steel and shipped it from its plants in Ohio or Pennsylvania to Sheet & Tube, in care of Hunter, f.o.b. cars at Indiana Harbor. At Indiana Harbor, Hunter received and unloaded the material and erected same and did all the work necessary in the construction of the buildings for which the steel was furnished. All payments, both for the furnishing of the steel and fabrication thereof and the erection thereof and the construction of the buildings, were made to Fort Pitt. These payments amounted to $1,421,847.39, of which, in accordance with the figures used in making up the original bid, $840,526.53 was retained by Fort Pitt for furnishing and fabricating the steel, $494,037.09 was remitted by Fort Pitt to Hunter for their work in the erection of said steel and construction of said buildings, and $87,282.77 represented freight paid by Sheet & Tube upon the material shipped by Fort Pitt to Indiana Harbor, pursuant to the orders of Sheet & Tube.

All payments were made by Sheet & Tube from their office in Youngstown, Ohio, to Fort Pitt at Pittsburgh, Pennsylvania, and all payments by Fort Pitt to Hunter were from Fort Pitt's Pittsburgh office to Hunter's Youngstown office. All negotiations for the furnishing of the material and construction of the new buildings were carried on in Youngstown, Ohio. All orders went

from Youngstown, Ohio, to Pittsburgh, Pennsylvania. Fort Pitt never entered the State of Indiana in connection with the performance of this work of furnishing and fabricating the steel or making the bid therefor. Hunter did all the work required by the contract to be done in Indiana and paid the Indiana gross income tax upon all the money it received for the work it did. Fort Pitt treated its receipts for Hunter and for furnishing and fabricating the steel as not subject to Indiana gross income tax and did not pay same. Subsequently the auditors of the appellant investigated Fort Pitt's books and records and determined that Fort Pitt was liable for gross income tax on the entire amount received by it, less the usual exemptions. Tax was assessed accordingly, with interest added, and was paid and this suit was brought to recover same.

Section 2 of the Indiana gross income tax law provides that a gross income tax shall be levied upon the entire gross income of all persons resident in Indiana, and upon the gross income of non-residents derived from activities or business or any other source within the State of Indiana. § 64-2602, Burns' 1943 Replacement; Acts of 1937, ch. 117, § 2, p. 604.

Appellee contends that the transaction here involved was, in fact, divisible, consisting of (1) furnishing the fabricated steel by Fort Pitt and (2) construction work at Indiana Harbor by Hunter. It says that it is not liable for tax upon Hunter's share of the total price paid by Sheet & Tube, because it had nothing to do with the activity and business conducted in Indiana by Hunter, and that it is not liable for tax upon the price paid for the steel and fabrication thereof furnished by appellee, because the fabrication occurred outside the state and furnishing the steel was an interstate transaction. They point to the fact that all of the work done

by them was done in Ohio, and the material fabricated by them there was shipped to Sheet & Tube in Indiana. It is the State's contention that there was one indivisible contract for furnishing and fabricating material and erecting buildings; that this contract was between Sheet & Tube and Fort Pitt; that Fort Pitt was responsible for the entire job and, in fact, performed the entire job, using Hunter as subcontractor or agent in the performance of everything to be done under the contract, except the fabrication and furnishing of the steel.

The first question which presents itself for consideration is whether, as contended by Fort Pitt, there were, in fact, two contracts, one to be performed by Fort Pitt and the other to be performed by Hunter. It seems to us that the transaction is irrevocably characterized by the fact that the bid was made in Fort Pitt's name and Sheet & Tube directed all orders and made all payments to Fort Pitt, not only for fabricating and furnishing the steel, but also for the erection and construction work, and that Fort Pitt permitted this to be done. It was, we think, clearly a single contract, whereby Fort Pitt committed and obligated itself for the entire result. The language of the contract is not unlike the conventional building or construction contract, which obligates the contractor to furnish labor and material and erect and construct in accordance with designated plans and specifications. Such a contract is not dual in nature, calling for the furnishing of material on one hand and, separately and on the other hand, calling for the furnishing of labor to convert such material into a finished structure. Nor is this. It seems to us that the most that can be made of the situation under the evidence most favorable to appellee is that Hunter became Fort Pitt's subcontractor in the dismantling of

old buildings and the construction and painting and other work required at Indiana Harbor by the terms of the contract between Fort Pitt and Sheet & Tube.

Unless the activities, which are the subject of a tax, are carried on within the territorial limits of the taxing state by the one sought to be taxed, that state is without jurisdiction to impose the tax, and to do so constitutes a violation of the 14th Amendment to the Constitution of the United States. *James* v. *Dravo Contracting Co.* (1937), 302 U. S. 134, 138, 82 L. Ed. 155, 160; *Connecticut Life Ins. Co.* v. *Johnson* (1938), 303 U. S. 77, 80, 81, 82 L. Ed. 673.

Activities within a state are local, even though they are connected with and affect, or are affected by, activities outside the state. *Kansas City Structural Steel Co.* v. *Arkansas* (1925), 269 U. S. 148, 152, 70 L. Ed. 204, 206; *Dravo Contracting Co.* v. *James* (CCA 4th, 1940), 114 F. 2d 242, 246; *Holland Furnace Co.* v. *Department of Treasury* (CCA 7th, 1943), 133 F. 2d 212, 215; *General Railway Signal Co.* v. *Virginia ex rel. Corp. Com.* (1918), 246 U. S. 500, 510, 62 L. Ed. 854, 858; *E. A. Browning* v. *City of Waycross* (1914), 233 U. S. 16, 22, 58 L. Ed. 828, 830.

A corporation which contracts in the state of its residence to do work in a foreign state subjects itself to the jurisdiction of such foreign state, notwithstanding it employs independent contractors to do the actual work and does no part of the actual work itself. *Kansas City Structural Steel Co.* v. *Arkansas* (1925), 269 U. S. 148, 70 L. Ed. 204; *Tad Screen Advertising, Inc.* v. *Oklahoma Tax Com'n.* (CCA 10th, 1942), 126 F. 2d 544, 549; *Alabama Western R. Co.* v. *Talley-Bates Construction Co.* (1909), 162 Ala. 396, 50 So. 341, 344.

Appellee seeks refuge in the idea that, while the primary obligation to do the work at Indiana Harbor was on it, it had sublet the work to Hunter and that Hunter was not its agent but an independent contractor. We think the trial court reasonably could have inferred from the evidence most favorable to appellee that this was true. The distinction between an independent contractor and an agent is well established. A subcontractor agrees to do something for another, but is not controlled or subject to the control of the other in the manner or method of accomplishing the result contracted for. An agent is subject to the control of his principal, with respect to the details of the work assigned to him. (2 Am. Jur., Agency § 8, p. 17). This is the commonly accepted differentiation between the two. It occurs to us, however, that, in the accomplishment of the result, the independent subcontractor acts for the prime contractor. In the accomplishment of the result, not in the details of its accomplishment, he is, in a way, the prime contractor's agent (see Anno. 19 A. L. R., at p. 268, Note 1), and the prime contractor profits or loses, depending upon the accomplishment of the desired result. Primarily the accomplishment of the work at Indiana Harbor was Fort Pitt's obligation. Essentially it was its business. It accomplished it through Hunter, without control of the manner or method of doing it. Nevertheless, Fort Pitt received income by reason of it, and that income was derived by Fort Pitt from the accomplishment of a result it had contracted to accomplish in Indiana. It was derived from an activity in Indiana for which it was responsible. It came from its business in Indiana, carried on through the medium of a subcontractor acting independently as to manner and method, but acting for Fort Pitt in the

accomplishment of the result which it had contracted to bring about.

The case of *Alabama Western R. Co.* v. *Talley-Bates Construction Co., supra,* is very much in point in the question now under discussion. There a Tennessee corporation contracted in Tennessee to build a railroad in Alabama. It subcontracted the work by a contract made in Tennessee. It did not qualify in Alabama, as required by Alabama statute of all foreign corporations engaged in or transacting any business in the state. The subcontractors did all the work, the railroad company failed to pay, and the prime contractor sued. It was contended it had no standing in court, for failure to qualify in Alabama. It contended it did not have to qualify because it had not engaged in or transacted any business in the state. The Supreme Court of Alabama held otherwise. In the course of its opinion, the court said:

> "Does not a corporation engaged in the performance of its corporate functions when it secures the doing of the thing it was chartered to do through the employment of contractors; and if so, does it not transact business at the place where the work is done? We think so." (50 So., at p. 344.)

And it further said:

> ". . . Our conclusion, then, is that, if the plaintiff constructed the railroad by the employment of subcontractors under the conditions predicated in the count and plea, it had more than a mere pecuniary interest in the work. It was not a mere guarantor. It was interested as principal. It engaged in the exercise of its corporate functions in this state, notwithstanding it employed independent contractors to do the actual work." (50 So., at p. 344.)

*Tad Screen Advertising, Inc.* v. *Oklahoma Tax Com'n., supra,* involved a tax levied by Oklahoma. Tad was a

foreign corporation, without office or place of business in Oklahoma. Its business was manufacturing advertising moving picture film and selling and furnishing film advertising service. Its agents solicited contracts from local advertisers in Oklahoma. These were sent to Tad's office in Texas for acceptance. By those contracts, Tad bound itself to exhibit advertising films in local theaters for local advertisers. Tad then manufactured the films and shipped them to a local theater under contract with Tad to exhibit them, in accordance with Tad's contract with the local advertiser. Tax was demanded upon receipts derived from such advertising contracts. Tad paid the tax and sued to recover the amount so paid. It was claimed that the service rendered by it was interstate in character and that the imposition of the tax burdened interstate commerce. It also asserted that the local exhibitor, in running the films in a local theater, acted as an independent contractor and that Tad was not engaged in furnishing advertising service in Oklahoma. The United States Circuit Court of Appeals for the Tenth Circuit held that the service rendered outside the state in preparing the film was merely incidental to the service of exhibiting the film in Oklahoma and that the tax properly was levied upon the entire gross proceeds. The following quotation from the opinion indicates the court's view of the effect for tax purposes of using an independent contractor in the performance of an obligation in a foreign state:

> "The question remains, Did Tad furnish the primary service? Where a third person occupies the relation of independent contractor to his employer, the law recognizes certain limitations upon the liability of the employer for torts committed by the independent contractor. We do not think those limitations are applicable here where the question is one of tax liability. Here, Tad contracted with local and national advertisers for the furnishing

of advertising service through the running of advertising films in local theaters in Oklahoma. Tad was primarily responsible to the advertisers for the furnishing of such service. It did not contract to employ others to furnish the service, but to furnish the service itself. The advertiser paid Tad for the service. The mere fact that Tad employed a subcontractor to actually perform the service did not change its obligation to the advertiser. We hold that Tad furnished the service to the advertiser, received the compensation for such service, and is liable for the tax laid on the gross proceeds derived from the furnishing of such service. This view is supported by the adjudicated cases." (p. 549.)

This language of a highly respected court seems sound to us and applies properly to the facts we have before us. It leads to the inevitable conclusion that Fort Pitt is liable for the tax levied upon the entire gross income derived from its contract with Sheet & Tube.

*Kansas City Structural Steel Co.* v. *Arkansas, supra,* is construed by appellant as holding that construction work by a subcontractor subjects the prime contractor to the jurisdiction of the state where the subcontractor is doing his work, and it is not without value as authority to that effect. But it may be distinguished from the case before us, and it is not clear from it alone that the mere subcontracting of the work to be done under a contract made elsewhere would be sufficient to subject the prime contractor to the jurisdiction of the state where the work is done. Therefore, we do not rely upon it. However, we think it sound and logical to so hold and, hence, do not hesitate to follow the Tad and Talley-Bates cases referred to and discussed above.

Fort Pitt, in asserting that the activities of Hunter in Indiana, did not have the effect of bringing Fort Pitt into Indiana, in such manner as to be doing business there, cites and relies strongly on the case of *Bank of*

*America* v. *Whitney Central Bank* (1923), 261 U. S. 171, 67 L. Ed. 594. In that case, the Bank of America sued the Whitney Central National Bank in New York City. Whitney Central's place of business was at New Orleans. The facts relied upon to establish the presence of Whitney Central in New York, for purposes of litigation in which a personal judgment was sought, consisted entirely of the fact that it had there several of what are commonly called correspondent banks. It did no business there except what is ordinarily done through correspondent banks. It was held that the services for Whitney Central by its correspondent banks were not sufficient to establish its actual presence in New York in such manner as to subject it to jurisdiction of the New York courts. That case and the one before us are not at all alike.

In addition to its contention that it was not doing business in Indiana and that the State of Indiana could not reach over into Ohio to tax it, Fort Pitt also assumes the position that the transaction involved was interstate in nature and that to tax the proceeds from it would place a burden upon interstate commerce. As we have already indicated, we do not believe that the contract here involved was a contract of sale with construction work in Indiana as a mere incident. We think it was a contract to furnish material and erect buildings in Indiana. It was what appellant aptly called a performance contract. This being true, the fact that the steel was fabricated and prepared in Ohio for use in Indiana under a contract made in Ohio, is immaterial if, in fact, the fabricated steel was used in the performance of the contract in Indiana and payments to Fort Pitt were dependent upon such use. The shipment of the material into Indiana was necessary in the performance of the contract. In this state of affairs, the

transaction as a whole was local in nature and subject to local tax and regulation. *Dravo Contracting Co.* v. *James, supra; Browning* v. *City of Waycross, supra; General Railway Signal Co.* v. *Virginia ex rel. Corp. Com., supra; Holland Furnace Co.* v. *Department of Treasury, supra; Tad Screen Advertising, Inc.* v. *Oklahoma Tax Com'n., supra.*

The Dravo case, above cited, should be considered in connection with *James* v. *Dravo Contracting Co., supra.* The two cases grew out of the same transaction. The Dravo Company was a Pennsylvania corporation engaged in the general contracting business. It contracted with the United States government to construct locks and dams in the State of West Virginia. West Virginia had a gross income tax law similar to ours and it assessed the Dravo Company upon the entire proceeds from its contract with the government for work in West Virginia. The tax was paid and suit was filed to recover. It appears that Dravo, in the performance of the work it had undertaken to do in West Virginia, purchased material outside of West Virginia and fabricated that material at its plant in Pennsylvania. Some of the material which it fabricated in Pennsylvania was preassembled in Pittsburgh and was there inspected, tested and accepted. The contract provided for partial payments as the work progressed and that all material and work covered by partial payments should become the sole property of the government. Some payments were made for material before it was delivered in West Virginia and that material became the property of the government in Pennsylvania. The Supreme Court of the United States held, in 302 U. S. 134, that West Virginia had no jurisdiction to lay a tax with respect to the business activities of Dravo in Pennsylvania, but that it did have jurisdiction over the business and activities of Dravo in West

Virginia, consisting of the installation of the locks and dams in that state. The case was sent back for another trial and upon a second trial the court apportioned the gross income of Dravo in accordance with the cost of work performed in the respective states. This judgment was appealed to Circuit Court of Appeals for the Fourth Circuit and Judge Parker wrote the opinion, in which he held in substance and effect, that there could be no apportionment, but that West Virginia could lay a tax upon Dravo's entire gross receipts from its contract with the government, less only the portion of such income as was derived from payments made upon "deliveries or fabrication" at its Pittsburgh plant. In the course of his opinion, Judge Parker said, on p. 246:

"... The tax here is not upon a unitary enterprise conducted in several states, but upon the business of contracting conducted in West Virginia, and income derived from the business is properly subject to taxation by that state. Only 'upon receipts in other states for work done in other states' is the tax not assessable. The fact that the contractor may have prepared materials in other states for use under the contract is immaterial, if they were used in the performance of the contract in West Virginia and payments made the contractor were dependent upon such use."

And later, on the same page, said:

"In the very recent case of *McGoldrick* v. *Berwind-White Coal Mining Co.*, 309 U. S. 33, 60 S. Ct. 388, 398, 84 L. Ed. 565, a state tax on sales of goods from without the state for consumption within the state was sustained on the ground that deliveries occurred within the state. On the same principle, the state unquestionably may tax the income of a contractor arising upon construction within the state or delivery within the state at the site of the construction; and the fact that the materials may have been fabricated in other states,

either by the contractor or by others, cannot affect the state's power. . . ."

It seems clear to us that these Dravo cases hold, in substance, that mere fabrication of material in Pennsylvania, followed by shipment into West Virginia for use in the work there, does not deprive West Virginia of jurisdiction to tax the income derived from such material as a part of the local activity of building the locks and dams there. The exception seems to be only that material which was accepted and paid for and the title to which passed to the government in Pennsylvania, was beyond the taxing jurisdiction of West Virginia. In the case before us, the fabricated steel was not inspected or accepted in Ohio and the title to it did not pass in Ohio. It falls within the general rule of the Dravo cases, not within the exception to the general rule.

In *Holland Furnace Co.* v. *Department of Treasury, supra,* the Furnace Company was a Michigan corporation and it manufactured furnaces and heating appliances in Michigan. It made contracts to furnish and install such appliances at the customer's premises in Indiana. It was claimed by it that the entire transaction, including sale and installation, was interstate in character and not subject to the Indiana gross income tax. Tax was assessed upon the entire income from such transactions. It was paid, and suit was filed to recover same. Recovery was denied and appeal was taken to the Circuit Court of Appeals for the Seventh Circuit, and judgment was affirmed. Interstate Roofing and Supply Company was an Illinois corporation, which undertook to furnish shingles to Indiana customers and apply them to Indiana structures. The same general question was presented by it as was presented by Holland Furnace Company. Both cases, as well as others, were con-

sidered in the same opinion and, in the discussion of the right of the State of Indiana to assess gross income tax upon receipts from such transactions, the court used the following language on p. 215:

"The Holland and Interstate contracts were contracts to perform work and furnish labor and materials at specified places in Indiana; such contracts are local in character; *Smith Corp.* v. *Ellis,* 257 Mass. 269, 153 N. E. 548, 549; and *Walstrom* v. *Oliver, etc.,* 161 Ala. 608, 50 So. 46, 48; and we have no hesitance in saying that the State of Indiana has the right to apply its gross income tax to business actually transacted within its borders, notwithstanding that interstate commerce, as an incident, may have intervened at some point in the transaction. . . ."

The same language is exactly applicable to the facts in the case before us.

A question similar to that before us was presented in *General Railway Signal Co.* v. *Virginia ex rel. Corp. Com., supra.* In that case the Signal Company by contract undertook to furnish certain materials, machinery, devices and equipment and to install, erect and put them in place as signal devices in a foreign state. As a result of performance of this contract, it was fined for doing business in the state without first obtaining authority. The Supreme Court held that what the corporation was required to do under its contract was local business, separate and distinct from interstate commerce and the judgment of the lower court was affirmed.

We hold that the contract between Fort Pitt and Sheet & Tube was indivisible; that it was not a sales contract, but was a contract to furnish material and erect buildings in Indiana and, as such, called for activities and business local to Indiana; that performance of part of this contract in Indiana Harbor by Hunter was per-

formance by Fort Pitt; that Indiana had the right to levy its income tax on the receipts from the performance of such contract against Fort Pitt, both for the furnishing of the material and for the construction work done for it by Hunter.

The judgment is reversed, with instructions to sustain appellant's motion for new trial and further proceedings consistent with this opinion.

Emmert, J., not participating.

NOTE.—Reported in 86 N. E. 2d 685.

## ON PETITION FOR REHEARING

YOUNG, J.—In the petition for rehearing filed herein our attention is called to our failure to consider the taxibility of appellee's receipts from shipments to H. H. Robertson Company, at Indiana Harbor, Indiana, and from services rendered C. Rowley Sons, Inc., at Kinttanning, Pennsylvania. The amount involved in the Robertson transaction was $1715, and the amount involved in the Rowley transaction was $25. The gross income tax assessed upon these two sums would have been not more than $17.40. Our failure to treat these items in our original opinion was due to the comparative insignificance of the taxes collected by the State with respect to them. Probably for the same reason the evidence with reference to the nature of these items was meager. However, there was some evidence from which the trial court could have believed that the sale to Robertson Company was a transaction in interstate commerce and that the services to Rowley were performed outside the State of Indiana. If so these receipts were not taxable. Notwithstanding the small amount involved, we should have so pointed out in our original opinion. If, upon the new trial required by our mandate,

it is so found, recovery should be allowed appellee to the extent of taxes shown to have been collected upon these items, together with proper interest thereon.

We are not convinced of other error in the original opinion herein, and the petition for rehearing is therefore overruled.

Emmert, J., not participating.

NOTE.—Reported in 87 N. E. 2d 721.