## Indiana Department of Revenue, Gross Income Tax Division v. P. F. Goodrich Corp.

[No. 1171S341. Filed February 6, 1973.]

*Theodore L. Sendak,* Attorney General, *Mark Peden,* Deputy Attorney General, for appellant.

*Patrick J. Smith, Russell J. Ryan, Jr.,* of Indianapolis, for appellee.

DeBruler, J.—This is an appeal from a decision of the Marion County Superior Court, Honorable Addison M. Dowling presiding. It was originally filed with the Court of Appeals but was transferred to us pursuant to IC 1971, 33-3-2-7, being Burns § 4-214 (repealed effective January 1, 1972), and Appellate Rule 15 (L) because of important questions concerning sections of the Federal Constitution; specifically the Art. 1, § 8 Commerce Clause, and the Due Process Clause of the Fourteenth Amendment.

P. F. Goodrich Corporation is an Indiana Corporation domi-

ciled and incorporated under the laws of this State and doing business here. Goodrich owned 4,520 out of the 31,628 outstanding shares of the common capital stock of Calumet Refining Company which is a Delaware Corporation with its principal place of business in Illinois. In 1961, Mr. Goodrich, the president of Goodrich Corporation, was contacted by Mr. James Termondt who was acting as executor of the estate of one of the major shareholders of Calumet. Mr. Termondt stated that some of the remaining shareholders had expressed an interest in dissolving the corporation and he inquired of Goodrich what his feelings would be. He also told Goodrich that other shareholders were planning to call a meeting of the directors to vote on an offer of seventy dollars per share made by one Harry Fair. Goodrich stated that he would not be opposed to the idea of dissolving the corporation but thought that Fair's offer was too low. Goodrich and Termondt agreed to draft a letter to the remaining shareholders indicating their feelings on the subject and the shareholders subsequently dropped the offer without bringing it before the directors.

Over the next several months Goodrich and Termondt corresponded by phone and letter concerning various offers made to Calumet by prospective purchasers, some of whose names were suggested by Goodrich. Bids were accepted and eventually an agreement was reached with CRC Company for a selling price of $3,482,242.80, or about $100.00 per share. A general shareholders' meeting was held in Illinois with Goodrich Corporation voting its shares by proxy for the dissolution of Calumet. Shortly thereafter the corporation was dissolved and each shareholder received his portion of the proceeds of the transaction. Goodrich Corporation received $467,865.20 for its 4,520 shares.

On its 1962 gross income tax return Goodrich listed this money as resulting from an "out-of-state security transaction" and thus exempt from Indiana taxes by both the Due Process Clause of the Fourteenth Amendment and the Commerce

Clause found at Art. 1, § 8. The Gross Income Tax Division notified Goodrich that it considered this money as part of the Corporation's taxable gross income for the year and assessed the tax at $6,885.48. Goodrich filed a written protest and was subsequently offered a hearing by the tax division. The hearing officer denied the protest and set the entire assessment including interest and penalties at $8,561.93. Goodrich paid that amount and filed this action for refund against the tax division in the Marion County Superior Court. IC 1971, 6-2-1-19, being Burns § 64-2614a.

The trial court found in favor of Goodrich on the grounds that the tax here was barred by both the Due Process Clause and the Commerce Clause of the United States Constitution, and rendered judgment for Goodrich for the total tax paid. The Gross Income Tax Division perfected an appeal to this Court from that judgment.

At the outset we should point out that both the Gross Income Tax Division and Goodrich agree that this type of security transaction comes within the statutory definition of gross income found at IC 1971, 6-2-1-1, being Burns § 64-2601(m), and this appeal lies only on the possible constitutional restrictions of the Due Process and Commerce Clauses.

In order to determine the validity of this tax upon appellee Goodrich we must first turn to the question of whether this State, as a matter of due process, has jurisdiction to tax this corporation through the money it received from the dissolution of Calumet. Appellee asserts that the tax violates the Due Process Clause because it was a tax upon the dissolution of a Delaware corporation which occurred wholly outside the State, and thus Indiana has exceeded its jurisdiction by attempting to place a tax on a transaction outside of its borders. This interpretation of the Indiana Gross Income Act misconstrues the incident and transaction sought to be taxed by it. It has long been established that the taxable event of this Act is the receipt of income within

this State. Burns § 64-2601, *supra; Mueller Brass Co.* v. *Gross Income Division* (1970), 255 Ind. 514, 265 N. E. 2d 704; *Miles* v. *Dept. of Treasury* (1935), 209 Ind. 172, 199 N. E. 372.

This record reveals that the tax assessed here is consistent with this definition since the amount sought to be taxed is the money received in this State by appellee corporation rather than the entire sum generated by Calumet's dissolution. The transaction to be taxed is the receipt of income rather than the dissolution of Calumet. The distinction is an important one for the purposes of Due Process. The taxation of income is not analagous to the taxation of the source of that income and while the source of that income may be beyond the jurisdiction of this State the income itself may not enjoy the same immunity. *Miles* v. *Dept. of Treasury, supra.* With the taxable event thus defined we now turn to the due process contention.

The Due Process Clause of the Fourteenth Amendment requires that a state must have a definite link, a certain degree of contact or nexus, between itself and the person, property or transaction it seeks to tax. *Miller Bros. Co.* v. *State of Maryland* (1954), 347 U.S. 340, 74 S. Ct. 535, 98 L. Ed. 744; *Mueller Brass Co.* v. *Gross Income Division, supra.* The corporation sought to be taxed here has more than the requisite minimum connection with this State. It is incorporated in Indiana, does business in Indiana and in fact has its only office in Indianapolis. The taxpayer, the property and the transaction taxed all have a situs within this State. Goodrich is thus afforded all the rights, protections and privileges of Indiana's government and is in turn expected to bear the responsibility shouldered by the remaining residents for the maintenance of that government. *Wisconsin* v. *J. C. Penney Co.* (1940), 311 U.S. 435, 61 S. Ct. 246, 85 L. Ed. 267; *Lawrence* v. *State Tax Commission of Miss.* (1932), 286 U.S. 276, 52 S. Ct. 556, 76 L. Ed. 1102. The United States Supreme Court has held that such residents in a state are an adequate basis for taxation. *Miller Bros. Co.*

v. *State of Maryland, supra; Lawrence* v. *State Tax Commission of Miss., supra.* Furthermore that Court has found that the event sought to be taxed here is a proper taxable incident for a resident within the confines of due process.

> "That the receipt of income by a resident of the territory of a taxing sovereignth is a taxable event is universally recognized. Domicile itself affords a basis for such ■ taxation." *People of the State of New York ex rel. Cohn* v. *Graves, et al.* (1937), 300 U.S. 308, 312, 57 S. Ct. 466, 81 L. Ed. 666.

We find therefore that Indiana has the necessary contacts and connections both with Goodrich and the income received in this State by Goodrich Corporation to uphold the State's jurisdiction to tax that amount. The possible constitutional restrictions on this tax does not end with this finding of bare jurisdiction, however. Appellant tax division has levied a tax based on the entire amount received by Goodrich as a result of the Calumet dissolution. Appellee corporation, on the other hand, contends that the Commerce Clause at Art. 1, § 8, of the United States Constitution shields all of these funds from any taxation whatsoever by this State because they were derived from a transaction in interstate commerce. We believe the correct approach in this situation to the restriction of the commerce clause does not result in such all or nothing propositions.

The law in this area has been one of flux for some years and the United States Supreme Court has acknowledged that the Court's attempt to apply the Commerce Clause to ■ specific state statutes has sometimes resulted in "controversy and confusion and little in the way of precise guides to the states in the exercise of their indispensible power of taxation." *Portland Cement Co.* v. *Minnesota* (1959), 358 U.S. 450, 79 S. Ct. 357, 3 L. Ed. 2d 421. There are several general principles however which have long been established and which are applicable to this particular case. One is that interstate commerce is a federal preserve by virtue of Art.

1, § 8, cl. 3, of the Constitution. It is equally well established also that even interestate commerce must bear its just share of the state tax burden. *General Motors Corp.* v. *Washington* (1964), 377 U.S. 436, 84 S. Ct. 1564, 12 L. Ed. 2d 430; *Western Livestock* v. *Bureau of Revenue, et al.* (1938), 303 U.S. 250, 58 S. Ct. 546, 82 L. Ed. 823; *Evansville Vanderburgh Airport Authority District* v. *Delta Airlines* (1972), 92 S. Ct. 1349.

The question then becomes, particularly in this area of gross income taxation, whether "what the state is exacting is a constitutionally fair demand by the state for that aspect of the interstate commerce to which the state bears a special relation." *Central Greyhound Lines of New York* v. *Mealey* (1948), 334 U.S. 653, 661, 68 S. Ct. 1260, 92 L. Ed. 1633. Although the approach to the Commerce Clause problem is thus somewhat similar to the Due Process problem, *National Bellas Hess, Inc.* v. *Dept. of Revenue* (1967), 386 U.S. 753, 87 S. Ct. 1389, 18 L. E. 2d 505, we believe that the Commerce Clause may prevent a state from exercising its powers upon a person or property over which it has due process jurisdiction. This is such a case. Although it is apparent that the State has jurisdiction over both the entire sum received by appellee Goodrich and over Goodrich Corporation itself we find that the State is prohibited by the operation of the Commerce Clause from including this entire amount as taxable income.

The problem with the tax base as defined here by the Gross Income Tax Division is that it is not properly apportioned. *Evco* v. *Jones,* 41 U.S. Law Week 4037 (U.S. Dec. 4, 1972); *J. D. Adams Mfg. Co.* v. *Storen* (1938), 304 U.S. 307, 58 S. Ct. 913, 82 L. Ed. 1365. This is not to say, however, that the State is prohibited from exercising any taxing powers over these funds at all. On the contrary, courts have repeatedly upheld state income taxes which have been properly apportioned to a taxpayer's local activities within a state. *General Motors Corp.* v. *Washington, supra; Port-*

*land Cement* v. *Minnesota, supra; PanAmerican World Airways, Inc.* v. *Duly authorized Government of Virgin Islands,* 459 F. 2d 387 (3rd Cir. 1972) ; *Asiatic Trans-Pacific, Inc.* v. *Maddox,* 371 F. 2d 132 (9th Cir. 1967).

> "Nevertheless, as we have seen, it is well established that taxation measured by gross receipts is constitutionally proper if it is fairly apportioned." 377 U.S. at 440.

The danger inherent in an unapportioned gross receipts tax as we have here is that it creates a risk of cumulative burdens on interstate commerce. *Pacific Broadcasting Co.* v. *Riddel,* 427 F. 2d 519 (9th Cir. 1970). Proper apportionment of the tax base would alleviate this danger of multiple tax burdens on this transaction. The amount Goodrich received as a result of the Calumet dissolution must be apportioned to Goodrich's activities within Indiana.[1] As pointed out above Goodrich Corporation is incorporated here, has its sole office here and is doing business here. It enjoys the special benefits of the services provided by the office of the Indiana Secretary of State which is charged with administering the Indiana General Corporation Act. The Corporation is immersed in local connections. Its president carried out extensive negotiations over a period of time within this State concerning the sale and dissolution of Calumet. The State has thus afforded benefits, protections and opportunities for which it may properly ask something in return. *Wisconsin* v. *J. C. Penney, supra.*

We cannot agree with appellee Goodrich's contention that the entire tax scheme as applied to this transaction is unconstitutional. This is not a tax on interstate commerce but is rather a tax on the privilege of doing business within Indiana measured by the gross income of a domestic corporation which in this case must be apportioned

---

1. Possible approaches to the apportionment of such funds were suggested in H.R. Rep. 565 of the 89th Congress First Session. See also IC 6-3-2-2, being Burns § 64-3219.

properly because of the interstate aspects of the overall transaction. The problem is not that the entire tax is violative of the Commerce Clause but rather that the State has over-reached the constitutionally imposed limitations on its taxing power and must adjust itself accordingly.

Appellee cites the case of *Freeman* v. *Hewit* (1946), 329 U.S. 249, 67 S. Ct. 274, 91 L. Ed. 265, as authority for the claim that the application of the Gross Income Tax Act to this type of transaction violates the Commerce Clause. Despite the observation that the *Freeman* case has a somewhat different factual foundation it would seem to lend support to appellee's position. Although much of the law contained in *Freeman* is certainly good law today more recent opinions indicate that the law on this subject has not developed along the path of *Freeman's* specific outcome; but rather more in line with Justice Rutledge's concurring opinion. *Freeman* v. *Hewit, supra.*

> "As was said in Miller Bros. Co. v. State of Maryland (1954), 347 U.S. 340, 74 S. Ct. 535, 98 L. Ed. 744, 'the decisions have been not always clear * * * consistent or reconcilable. A few have been specifically overruled, while others no longer fully represent the present state of the law.' " 358 U.S. at 458.

It would appear therefore that the *Freeman* result would be overly prohibitive of state taxation in light of the cases cited above.

We now therefore reverse the judgment of the Superior Court. This case is now remanded to the Superior Court and that court is instructed to remand the case to the tax division for a rehearing and for a partial refund to Goodrich after evaluation of their claim in accordance with this opinion.

Arterburn, C.J., Givan, Hunter and Prentice, JJ., concur.

NOTE.—Reported in 292 N. E. 2d 247.