INDIANA DEPARTMENT OF STATE REVENUE, Appellant (Defendant below),

v.

BROWN BOVERI CORPORATION, Appellee (Plaintiff below).

No. 882S323.

Supreme Court of Indiana.

Aug. 31, 1982.

Linley E. Pearson, Atty. Gen., Ted J. Holaday, Deputy Atty. Gen., Indianapolis, for appellant.

William M. Pope, Garelick, Cohen, Frank & Fishman, Indianapolis, for appellee.

HUNTER, Justice.

This case is before this Court upon the petition to transfer of defendant-appellee, the Indiana Department of State Revenue (Department). The Court of Appeals, First District, affirmed the judgment of the low-er court in favor of Brown Boveri Corporation (Brown Boveri) holding that certain transactions of the company were protected as interstate commerce and were therefore exempt from any Indiana Gross Income Tax according to Ind.Code § 6–2–1–7(a) (Burns 1978). *Indiana Department of State Revenue v. Brown Boveri Corporation,* (1981) Ind.App., 429 N.E.2d 285.

While we agree with the Court of Appeals' decision affirming the classification of the company's transactions as interstate commerce, we do not agree with the court's decision as to the amount of interest which the state must pay on the refund. Transfer is now granted in order to consider the issue of the amount of interest which the state must pay. Accordingly, the decision and opinion of the Court of Appeals are hereby vacated, and appellee's petition to transfer is granted.

▮ We adopt that portion of the opinion of the Court of Appeals as written by Judge Robertson which affirms the trial court's decision that a refund is due Brown Boveri for certain payments of Indiana Gross Income Tax:

"Brown Boveri, a foreign corporation, entered into a contract with International Harvester Company (Harvester) in June, 1970, for the sale of an induction melting system consisting of six (6) furnaces, four (4) pre-heating and after burning systems, and two (2) air pollution control systems. The melting system was for the Harvester foundry in Indianapolis, Indiana, where automotive scraps and other materials would be turned into molten iron by being sent through the melting system.

"The sales agreement was for a 'turn-key' operation in which Brown Boveri was required to deliver a system that would produce sixty (60) tons of molten iron per hour. As a 'turn-key' operation, Brown Boveri was responsible for installation testing and adjustment of the melting system. The contract required Brown Boveri to install the system in such a manner that Harvester's production

would not be totally interrupted. The new system also had to tie into existing utilities. The final lump sum sales price was $4,693,628.08.

"The system was pre-fabricated at Brown Boveri's plant, broken down for shipment and reassembled at the Harvester plant. None of the standard catalog equipment sold by Brown Boveri was manufactured in Indiana. The air pollution control equipment was obtained from Research Contrell, Inc. of New Jersey, with installation being performed by Fisher-Klosterman, Inc. of Louisville, Kentucky.

"It was necessary for Brown Boveri to engage in various activities to guarantee proper planning and coordination of the project. These activities included reassembly of the equipment, removing obsolete equipment, pouring foundations, trenching, and re-enforcement of existing structures. Fisher-Klosterman's activities consisted of fabricating the Research Contrell, Inc. equipment in Louisville, Kentucky and then shipping the equipment to the job site for installation, which was also done by Fisher-Klosterman. Brown Boveri's project engineer, George P. Dancisin, was present at the job site and involved in the scheduling and coordination of various aspects of the project. He acted to make certain that the system would function as promised when completed.

"After auditing Brown Boveri and Fisher-Klosterman, the Department assessed them additional gross income tax, interest, and penalty in the sum of $44,439.92 and $8,318.87 respectively. Both companies paid the assessment. The claims of Brown Boveri and Fisher-Klosterman for a refund of the money paid were both denied by the Indiana Department of State Revenue. Subsequently, Fisher-Klosterman assigned its rights to Brown Boveri.

"The Department argues that the performance of substantial activities within Indiana removes the transaction from the protection afforded interstate commerce under Ind. Code 6–2–1–7(a) which reads as follows:

"There shall be excepted from the gross income taxable under this chapter: So much of such gross income as is derived from business conducted in commerce between this state and other states of the United States, or between this state and foreign countries, but only to the extent to which the state of Indiana is prohibited from taxing such gross income by the Constitution of the United States of America.

"The Department relies on certain Indiana cases where our supreme court has held that if activities taking place within Indiana are more than minimal or incidental to the whole contract, then those activities are sufficient to remove the transaction from the protection afforded interstate commerce. *See, Gross Income Tax Div. of Indiana v. Fort Pitt Bridge Works*, (1949) 227 Ind. 538, 86 N.E.2d 685; *Gross Income Tax Div. of Indiana v. Surface Combustion*, (1953) 232 Ind. 100, 111 N.E.2d 50.

"The Department contends the trial court's determination that the transactions involved were protected as interstate commerce is erroneous as a matter of law as well as contrary to the evidence. It is well established that this court can neither weigh the evidence nor determine the credibility of witnesses, but is confined to a consideration of only the evidence and reasonable inferences therefrom which support the judgment of the trial court. *Kruse, Kruse and Miklosko v. Beedy*, (1976) 170 Ind.App. 373, 353 N.E.2d 514.

"The leading case for determining what activity constitutes interstate commerce is *Gross Income Tax Division of Indiana v. Surface Combustion Corp., supra.* Surface Combustion Corp. was an Ohio corporation which sold a furnace system to an Indiana customer. As part of the sale, Surface Combustion was to install the system in the customer's plant. The assembling of these furnaces required specially trained persons possessing a mechanical knowledge of the furnace and a thorough understanding of the methods

and manner of assembly employed by the manufacturer. The court found in favor of Surface Combustion Corp. and stated:

"The facts as found by the trial court show that the only work performed in Indiana was the putting together of the parts of the furnaces, and the installation and adjustment thereof. There is not evidence that the furnaces were made, built, fabricated, created or brought into existence in Indiana. For the reasons above stated, the transactions here involved are clearly sales of personal chattels in interstate commerce and the installation and reassembling where required, were inherently a part of, and a necessary incident to, the sale.

"111 N.E.2d at 62.

"This court once again referred to the principle of *Surface Combustion* in the more recent case of *Indiana Department of State Revenue v. J.C. Penney Co.,* (1980) Ind.App., 412 N.E.2d 1246. In that case, the overall interstate character of the transactions was found sufficient to outweigh the local activities and thus, brought them within the protection of interstate commerce.

"The determination of whether certain activities constitutes interstate commerce must be made on a case by case basis. *Indiana Department of State Revenue, Gross Income Tax Div. v. Hoosier Metal Fabricators,* (1978) Ind.App., 379 N.E.2d 551. The facts of the present case are similar to those found in *Surface Combustion.* We accept the principle as set forth in *Surface Combustion* that the determining factor in deciding what activity constitutes interstate commerce is whether the activities in Indiana are so intrinsically related to and inherently a part of the interstate sale that it is seen as one continuing transaction.

"The facts of this case reveal that if the transaction is viewed as a whole, it is indeed interstate commerce such that taxation of gross income resulting therefrom is prohibited. The facts are uncontested and show that the contract between Brown Boveri and Harvester re-

quired them to supply a melting system capable of producing sixty (60) tons of molten iron per hour. As such this transaction was not a sale of individual component parts, but the sale of a functioning system for a lump sum price. The contract obligated Brown Boveri to install the system and then test and adjust it until the production quota had been achieved. Brown Boveri was also responsible for the removal of existing equipment in order to guarantee that the existing utilities needed for the new system were not damaged. Furthermore, Brown Boveri had to coordinate and supervise each phase of the operation so that the project could be completed as efficiently as possible. All of the component parts were pre-fabricated outside Indiana, disassembled for shipment, and then reassembled on the job site.

"It is apparent from the foregoing facts that when the transaction is viewed as a whole, the local activities of Brown Boveri were intrinsically related to and inherently part of the sale in interstate commerce. The activities in Indiana were required in order to make and complete the sale and did not constitute work performed under a local contract. Thus, the evidence shows that, under the principle set forth in *Surface Combustion,* the transaction between Brown Boveri and Harvester is protected as interstate commerce and exempt from the Indiana Gross Income Tax."

■ Since Brown Boveri is due a refund for their payments of Indiana Gross Income Tax, we must consider what rate of interest is applicable in this case. The trial court entered its order on October 28, 1980, and ordered the state to pay interest at the rate of eight percent (8%) per annum according to the statute then in effect. Ind.Code § 6–2–1–16(b) (Burns 1978). However, the refunds involved covered tax payments made in the years of 1970, 1971, 1972, and 1973, and the interest was awarded from specific dates in 1975. As the state points out, the 1977 amendment which changed the interest rate from six percent to eight

percent became effective on January 1, 1978. Ind.Code § 6–2–1–16(b), *supra.* The change in interest rates passed by the legislature was obviously an attempt to keep the rates current and was not a penalty to be assessed for money held during years when the general interest rates were not as high. We have previously held that an award of eight percent interest prior to the effective date of the statute is error. *Indiana Department of Revenue, Indiana Gross Income Tax Division v. Glendale-Glenbrook Associates,* (1981) Ind., 429 N.E.2d 217. Therefore, the trial court's award of eight percent interest prior to January 1, 1978, in this case was error.

For all of the foregoing reasons, transfer is granted and the opinion of the Court of Appeals is vacated. The cause is remanded to the trial court with instructions to correct the amount of interest awarded. The judgment of the trial court in all other things is affirmed.

GIVAN, C. J., and DeBRULER, PRENTICE and PIVARNIK, JJ., concur.