INDIANA DEPARTMENT OF REVE-
NUE, Defendant-Appellant,

v.

The WESTERN UNION TELEGRAPH
COMPANY, A New York
Corporation, Plaintiff-Appellee.

No. 73A01–8701–CV–1.

Court of Appeals of Indiana,
First District.

Aug. 11, 1987.

Rehearing Denied Sept. 29, 1987.

Linley E. Pearson, Atty. Gen., Ted J. Holaday, Deputy Atty. Gen., Indianapolis, for defendant-appellant.

Richard L. Gilliom, H. William Irwin, Stewart, Irwin, Gilliom, Meyer & Guthrie, Indianapolis, J. Bradley Schooley, Robison, DePrez, Lux & Schooley, Shelbyville, for plaintiff-appellee.

NEAL, Judge.

## STATEMENT OF THE CASE

Defendant-Appellant, Indiana Department of Revenue (the Department), appeals a judgment rendered by the Shelby Circuit Court in favor of plaintiff-appellee, Western Union Telegraph Company (Western Union). The judgment resulted from Western Union's suit seeking refund of gross income taxes paid for the years 1974 through 1981, and of retail taxes paid for the years 1975 through 1981. This appeal concerns the applicability of the interstate commerce exemption to certain aspects of Western Union's operation.

We reverse and remand in part, and affirm in part.

## STATEMENT OF THE FACTS

The facts, as stipulated by the parties, are as follows. Western Union, a New York corporation with its principal office in New Jersey, is a public utility providing telegraph exchange services. Western Union offers two types of teletypewriter service to its subscribers: Telex and TWX. The difference between the two systems is the speed of operation; Telex transmits 70 words per minute and TWX 90 words per minute. Western Union's international network allows a subscriber, through a teletypewriter, to communicate almost instantaneously with another subscriber anywhere in the world. In providing Telex/TWX service Western Union bills its subscribers for four separate monthly charges: equipment, access, usage, and facility.

The equipment charge is paid by the subscriber for the use of the teletypewriter. A subscriber is not required to obtain the equipment from Western Union, and if he buys or rents the equipment from a third party there is no equipment charge.

The access charge entitles a subscriber the use of Western Union's network in order to communicate with other subscribers. This monthly charge, governed exclusively by the Federal Communications Commission, represents the amount paid by Western Union to the telephone company for the lease of circuits to connect a subscriber to the Telex/TWX network.

The usage charge represents the amount billed to a subscriber for his actual use of the network. In the transmission of a message, only the sender is assessed a usage charge, the receiver is not. While the other three charges do not vary from month to month, the usage charge necessarily fluctuates depending on a subscriber's volume of message transmissions.

The facility charge is Western Union's fee for linking a subscriber with the nearest exchange site. Western Union has twelve exchanges within Indiana, and the charge is on a per-mile basis. If a subscriber is located in the same city as one of the twelve exchanges, it is possible he would not have to pay a facility charge. Of the four charges, all subscribers pay an access charge and a usage charge.

On January 14, 1985, Western Union filed a complaint. Under Count I it sought a refund of corporate gross income taxes paid from 1974 through 1981. Under Count II the utility sought a refund for sales taxes paid from 1975 through 1981. The basis for both counts was Western Union's claim that certain aspects of its operation were exempt from Indiana taxation because those aspects constituted interstate commerce. On March 17, 1986, the parties stipulated as to 34 documents and the above facts. A one-day bench trial was conducted on March 24, 1986. The parties filed a post-trial stipulation on April 21, 1986, agreeing that if Western Union were to receive a judgment in its favor on Count I, the amount would be $214,784.00 plus interest, and that if Western Union were to be successful on Count II, the refund would be $353,767.50 plus interest.

On August 8, 1986, the trial court entered its Findings of Fact and Conclusions of Law. It found that 90% of the Telex and TWX usage by Indiana subscribers involved interstate or intercontinental communications, and that "[e]ach segment or part of the Telex and TWX systems is necessary, integral and essential for the systems to work...." *Record* at 149.

Based on these findings the trial court concluded that Western Union's operation constitutes a communication service and not the rental of communication equipment. It also concluded that, given the fact that the vast majority of messages travel without Indiana, linking an Indiana subscriber to an Indiana exchange "is so intrinsically related to and inherently a part of the interstate communication and sale that it constitutes one continuing transaction," exempting the access and facility charges from gross income taxation. *Record* at 150. The trial court also concluded that the access and facility charges were exempt from retail taxation because they involved the provision of tangible personal property and were not regulated by the Public Service Commission. Judgment was then entered for Western Union in the stipulated amounts.

### ISSUES

The Department presents these issues for our review:

I. Whether the interstate commerce exemption precludes Indiana taxation of Western Union's activities.

II. Whether Western Union's access and facility charges are exempt from Indiana retail tax because those charges are not regulated by the Public Service Commission and they involve the provision of tangible personal property, which is exempted from such tax by statute.

### DISCUSSION AND DECISION

ISSUE I: *Gross Income Taxation*

The Department claims it is not precluded from imposing a gross income tax and a sales tax upon those aspects of Western Union's operation that occur entirely within Indiana, even if those aspects are related to interstate commerce.

In *Reynolds Metals Co. v. Indiana Dept. of State Revenue* (1982), Ind.App., 433 N.E.2d 1, this court analyzed the cases which developed the line of demarcation between taxable and non-taxable income where the interstate commerce exemption is claimed. A leading case in this area is *Indiana Dept. of State Revenue v. P.F. Goodrich Corp.* (1973), 260 Ind. 41, 292 N.E.2d 247. In *P.F. Goodrich,* an Indiana corporation owned stock in a Delaware corporation. Upon dissolution of the Delaware corporation, which took place entirely outside of Indiana, Goodrich received income from the liquidation of its stock. The supreme court held that Goodrich's domicile and business activity in Indiana constituted a sufficient basis to justify the imposition of the gross income tax on a portion of the proceeds from the dissolution. *Id.* at 48, 292 N.E.2d at 251. Because the income resulted from a one-instance taxable event incapable of division, the court suggested the three-factor formula of IND.CODE 6-3-2-2(b) as a means to apportion the intrastate and interstate activity. The court conceded that the transaction was interstate commerce, but noted that even interstate commerce must shoulder its just share of the state tax burden for that aspect of the interstate commerce to which the state bears a specific relation, stating: "This is not a tax on interstate commerce but is rather a tax on the privilege of doing business within Indiana measured by the gross income of a domestic corporation which in this case must be apportioned properly because of the interstate aspects of the overall transaction." *Id.* at 48–49, 292 N.E.2d at 251.

In *Reynolds Metals, supra,* we held that it is proper to determine taxability on the basis of separate and different transactions or separate and different categories of a taxpayer's transactions, and if a separate or different category of transactions lacks the sufficient connection with the taxing state, then that separate and different transactions or category may not be taxed, even though other transactions or categories of the taxpayer could be taxed. 433 N.E.2d at 11 (*citing Mueller Brass Co. v. Gross Income Tax Division* (1971), 255 Ind. 514, 265 N.E.2d 704; *Gross Income Tax Division v. Owens-Corning Fiberglas Corp.* (1969), 253 Ind. 102, 251 N.E.2d 818).

■ IND.CODE 6–2.1–2–2 contemplates a separation of intrastate income and interstate income, but where the income cannot

be separated, the formula provided by IND.CODE 6–3–2–2(b) is to be applied. A corporation must segregate its accounts and keep sufficient records so that intrastate and interstate activities producing income can be sufficiently identified and interpreted to intelligently assess the interstate commerce exemption. *Reynolds Metals, supra.*

In *Mueller Brass, supra,* the supreme court, despite an interstate commerce exemption claim by the taxpayer, a Michigan corporation, approved the taxation of a portion of the sales income depending upon the manner in which the sales were generated; house accounts and sales made directly by the out-of-state office to Indiana customers were exempt, sales made through the in-state office were not. In *Owens-Corning, supra,* the mere solicitation of in-state orders by an out-of-state company did not form a sufficient basis to impose a tax on the income generated by the solicitation. Payment on a contract for a construction project, bid by an out-of-state business and to be performed intrastate by a subcontractor, has been held to be taxable income as against an interstate commerce exemption argument. *Gross Income Tax Division v. Fort Pitt Bridge Works* (1949), 227 Ind. 538, 86 N.E.2d 685; *Reynolds Metals, supra.* Sales of an Indiana citizen's farm products by an out-of-state commission agent are exempt. *Gross Income Tax Division v. Strauss* (1948), 226 Ind. 329, 79 N.E.2d 103; *Gross Income Tax Division v. Quick* (1948), 226 Ind. 338, 78 N.E.2d 871. However, income tax may be assessed to an in-state consignment agent on his commissions, but not the sale price of the goods, for the sale of consigned goods which remain in the name of the out-of-state consignor until sold. *Dept. of Treasury v. Spindler Co.* (1943), 222 Ind. 53, 51 N.E.2d 363.

Western Union argues that the entire telecommunication network is offered as a whole to its customers for the purpose of sending and receiving teletypewritten messages. Each part of the system is necessary, essential, and integral to the operation of the network. In sum, Western Union contends that because the transmission of a message constitutes one continuing interstate transaction, each part of the system is non-separable and non-taxable. Western Union cites the following cases as support for its position.

In *Gross Income Tax Division v. Chicago District Electric Generating Corp.* (1956), 236 Ind. 117, 139 N.E.2d 161, the taxpayer was a corporation engaged in the production, transmission, and sale of electrical energy. Its only plant was located in Indiana, and it sold electricity to only two customers, a public utility in Indiana and one in Illinois. The taxpayer claimed an interstate commerce exemption for the sale of electricity to its Illinois customer. Dividing 3–2, the supreme court held that the generation and transmission of electricity is a continuous and simultaneous operation, and, where it is sold across state lines, such is an exempted transaction in interstate commerce. *Id.* at 122, 139 N.E.2d at 164. In separate dissents Chief Justice Achor and Justice Arterburn contended that the taxpayer's income resulted from the generation and production of electricity, a process occurring entirely within Indiana. Justice Arterburn maintained that the fact that the electricity was transmitted a few feet into Illinois was not a sufficient reason to confer an exemption; in fact, by doing so the majority gave the Illinois customer an unfair advantage over its Indiana counterpart.

Also cited is *Michigan-Wisconsin Pipe Line Co. v. Calvert* (1954), 347 U.S. 157, 74 S.Ct. 396, 98 L.Ed. 583, where a state sought to impose a tax on the loading of gas into an interstate pipeline network. In striking down the tax the U.S. Supreme Court looked to the practical effect of loading the gas into an interstate network and determined that this activity could not be separated from the interstate commerce.

■ An important distinction exists between the two preceding cases and Western Union's operation. In those cases the customer is located in another state; here, the customers and the facilities are in Indiana. Thus, there is no possibility of discrimination against interstate commerce

either by providing a direct commercial advantage to intrastate businesses or by creating the possibility of multiple taxation. *See Indiana Dept. of State Revenue v. Frank Purcell Walnut Lumber Co.* (1972), 152 Ind.App. 122, 282 N.E.2d 336, *trans. denied.*

Western Union also argues that *Gross Income Tax Division v. Surface Combustion Corp.* (1953), 232 Ind. 100, 111 N.E.2d 50, *cert. denied,* 346 U.S. 829, 74 S.Ct. 51, 98 L.Ed. 353, and *Indiana Dept. of State Revenue v. Brown Boveri Corp.* (1982), Ind.App., 429 N.E.2d 285 are controlling authority. In both cases the gross income tax was applied to transactions involving the installation of furnace systems in Indiana businesses by out-of-state corporations. In granting interstate commerce exemptions the courts stated that the determining factor is whether the activities in Indiana are so intrinsically related to and inherently a part of the interstate sale that it is seen as one continuing transaction. Because the transactions were viewed as sales of functioning systems for lump sum prices, and not sales of individual component parts, the courts held they were exempt as interstate commerce. 232 Ind. at 129, 111 N.E.2d at 62; 429 N.E.2d at 288.

A distinction exists between these two cases and *Fort Pitt Bridge Works, supra,* a distinction recognized by the *Surface Combustion* court. *Fort Pitt Bridge Works* involved a contract to furnish material and erect buildings in Indiana, clearly a transaction for the performance of a local activity within this state.

■ Western Union's arguments do not overcome the holding of *P.F. Goodrich, supra,* which permitted a partial taxation of a purely interstate transaction. Even if we adopt Western Union's position as to the single, integrated system operating in interstate commerce, under *P.F. Goodrich, supra,* Western Union still must bear its share of the state tax burden because its facilities, equipment, and servicing are located here, and Indiana has a relation to those things. If the income generated by the local activities cannot be separated and identified, the formula provided by IND. CODE 6–3–2–2(b) is to be applied. However, here the local activities have been conveniently separated and identified, so it is not necessary to resort to the formula. *See Reynolds Metals, supra.*

The argument that transmitting a message is one continuous transaction in interstate commerce, and therefore totally exempt from taxation, is invalid. Even if it is entirely an interstate transaction, it must bear a share of the state tax burden for those aspects of the commerce to which Indiana bears a special relation. *General Motors Corp. v. Washington* (1964), 377 U.S. 436, 84 S.Ct. 1564, 12 L.Ed.2d 430; *P.F. Goodrich, supra.* The equipment, access, and facility charges are clearly identified and separately billed. These charges bear a special relation to this state and will not be subjected to multistate taxation. Therefore, imposition of the gross income tax relative to these charges was not an undue burden on interstate commerce. Accordingly, we reverse the trial court's judgment as to Count I.

ISSUE II: *Gross Retail Taxation*

The trial court ruled that Western Union's access and facility charges were not subject to Indiana gross retail taxation because these charges were not regulated by the Public Service Commission and they involve the provision of tangible personal property, which is exempted by statute from such tax.

The Department argues that the applicable statute does not require that the Public Service Commission establish rates for these charges as a condition to the imposition of the tax, and the evidence was insufficient that the access and facility charges constituted the provision of tangible personal property.

Pursuant to IND.CODE 6–2.5–4–7(a),[1] "A person engaged as a public utility is a retail merchant making a retail transaction when the person furnishes intrastate telegraph service," and, under 45 IAC 2.2–4–17(b), "the gross income received there-

---

1. Formerly codified at IND.CODE 6–2–1–38(e).

from shall constitute gross retail income from a retail transaction."

In concluding that the access and facility charges were exempt from the gross retail tax because they were not regulated by the Public Service Commission the trial court relied upon Instruction 2(d) of the Department's Revenue Circular ST–23, and subsection III of Sales Tax Regulation 37–400, which is codified at 45 IAC 2.2–4–17(c).

Instruction 2(d) of Revenue Circular ST–23 provides:

> With respect to the furnishing of *intrastate telegraph service* by public utilities, the gross retail tax shall apply to charges imposed on a customer or consumer of such public utility for the transmission and delivery of an *intrastate* telegraph whether paid in cash or billed as well as for the right to transmit specific written messages or intelligence through the use of equipment provided by such public utility *where the charges for the transmission of such messages or intelligence are based upon a schedule of rates filed with and approved by the Public Service Commission of Indiana and excluding charges imposed for the furnishing of equipment and facilities used in connection therewith.* (Emphasis supplied)

Subsection III of Sales Tax Regulation 37–400 states:

> Intrastate telegraph service: The tax is imposed on a consumer for the privilege of transmitting telegrams, specific written messages, or intelligence through the use of equipment provided by public utilities *where the amount of the charge for such messages or intelligence is regulated by the Public Service Commission of Indiana.* The tax applies to the total receipts of such public utilities for transmission of such messages or intelligence. (Emphasis supplied)

The trial court found that the equipment, access, and facility charges are exclusively regulated by the Federal Communications Commission, and that Western Union's PSC tariff for the tax periods involved had no rates for the access and facility charges.

In claiming that the trial court erred in this determination the Department places itself in the unenviable position of arguing that its own regulation is invalid.

We believe the regulations are clear that, in the absence of regulation by the Public Service Commission, the access and facility charges are exempt from the gross retail tax. We do note that, absent a regulation or statute, the fact that a utility is regulated by a federal agency to the exclusion of a state agency does not deprive Indiana of the ability to tax. *See Chicago District Electric Generating Corp., supra.*

The trial court also concluded that the access and facility charges were exempt from the gross retail tax because of IND.CODE 6–2.5–4–7(b)(1), which states that "a person engaged as a public utility is not a retail merchant making a retail transaction when the person provides, installs, constructs, services, or removes tangible personal property which is used in connection with the furnishing of intrastate telegraph service." The Department argues that the evidence was insufficient to show that tangible personal property is involved in the access and facility charges.

We disagree. Given the nature of the access and facility charges, the broad language of IND.CODE 6–2.5–4–7(b)(1), and the definition of "provide," as found in the *American Heritage Dictionary* (1978), as "to furnish, supply, or make available," the trial court's conclusion was correct, and its judgment as to Count II is affirmed.

For the above reasons, the cause is remanded and the trial court is instructed to enter a judgment for the Department on Count I. The judgment on Count II is affirmed.

Judgment reversed in part and affirmed in part.

RATLIFF, C.J., and MILLER, P.J., concur.