GROSS INCOME TAX DIVISION, STATE OF INDIANA *v.*
SHANE MANUFACTURING COMPANY, INC.

[No. 30,157. Filed June 20, 1963. Rehearing denied
September 17, 1963.]

*Edwin K. Steers,* Attorney General and *Charles D. Rodgers,* Deputy Attorney General, for appellant.

*Willard C. Shrode, Isidor Kahn* and *Kahn, Dees, Donovan & Kahn,* of counsel, all of Evansville, for appellee.

ARTERBURN, J.—This is an action brought by the Shane Manufacturing Company, Inc. to recover gross income taxes paid during the years 1954, 1955, and 1956, on the ground that the tax was levied on interstate commerce transactions and was therefore illegally collected by the State of Indiana. Burns' §64-2614a.

The trial court entered a judgment for the Shane Company, from which the State prosecutes this appeal. The evidence shows that the Shane Manufacturing Company, at its plant in Evansville, Indiana, manufactured and sold to Sears, Roebuck & Company, an out of state corporation, certain manufactured products. All shipments were f.o.b. the Shane plant at Evansville.

The evidence further shows that all merchandise was delivered to trucks owned by Sears, Roebuck & Company at the plant in Evansville, pursuant to bills of lading, and distributed by Sears, Roebuck & Company to various retail stores outside the State of Indiana. The goods were packaged in cartons and no inspection of the merchandise was made until the merchandise arrived at the retail stores outside the state.

The appellee contends that since the goods were carried immediately outside the state and were not inspected until some time later the transaction is not taxable. On the other hand, the appellant contends that the goods were actually delivered to the purchaser in the State of Indiana, and that the knowledge or the fact that they were to be taken immediately outside the state does not exempt the transaction from the gross income tax. With the contention of the appellant we must agree under the decisions of both the United States Supreme Court and the Supreme Court of this state.

In the case of *Dept. of Treasury* v. *Wood Corp.* (1941), 313 U. S. 62, 61 S. Ct. 885, 85 L. Ed. 1188, an Indiana corporation sold to the Baltimore & Ohio Railroad Company railroad ties which were *delivered in the State of Indiana.* The ties were then carried by the purchasing railroad out of Indiana to be used at various points outside the state. The court, in determining whether or not the sale of ties by the Wood Preserving Corporation was taxable, stated:

"These were local transactions, — sales and deliveries of particular ties by respondent to the Railroad Company in Indiana. The transactions were none the less intrastate activities because the ties thus sold and delivered were forthwith loaded on the railroad cars to go to Ohio for treatment. The contract providing for that treatment called for the treatment of ties to be delivered by the Railroad Company at the Ohio plant, and the ties bought by the Railroad Company in Indiana, as above stated, were transported and delivered by the Railroad Company to that treatment plant. Respondent did not pay the freight for that transportation and the circumstance that the billing was in its name as consignor is not of consequence in the light of the facts showing the completed delivery to the Railroad Company in Indiana."

In the case of *Harvester Co.* v. *Dept. of Treasury* (1944), 322 U. S. 340, 64 S. Ct. 1019, 88 L. Ed. 1313, *Department of Treasury* v. *Allied Mills, Inc.,* 220 Ind. 340, 42 N. E. 2d 34, the International Harvester Company made sales to out-of-state dealers who came into Indiana and took delivery. The court said in that case:

> "The Class D sales are sales by an Indiana seller of Indiana goods to an out-of-state buyer who comes to Indiana, takes delivery there and transports the goods to another State. *The Wood Preserving Corp.* case indicates that it is immaterial to the present issue that the goods are to be transported outside of Indiana immediately on delivery. Moreover, both the agreement to sell and the delivery took place in Indiana. Those events would be adequate to sustain a sales tax in Indiana."

The physical and actual delivery of the goods occured at the Shane Manufacturing Company's plant in Indiana when the products were turned over to Sears' trucks. The fact that the products were then taken by the purchaser to retail store outlets outside of Indiana creates a situation similar to the one where the Wood Preserving Company delivered ties to the B & O in Indiana, which the railroad then carried outside the state.

The mere fact that Sears, Roebuck & Company did not see fit to inspect the products at the time of the delivery, but rather waited until they reached a retail store, does not alter the fact that title was transferred at the time of delivery in Evansville. The inspection was merely a condition subsequent. If the merchandise were found faulty, the sales transaction could be rescinded. Uniform Sales Act, Burns' §58-203, Rule 3; 3 Williston, Sales §474 (Revised Ed.).

The same situation exists where a non-resident purchaser comes into Indiana and buys from a retail store some product, but waits until he arrives at home to open the package, and thereupon finds that it is defective in some particular. The mere delay in inspection does not change the fact that title vested in the purchaser, subject to a recision because the product might prove faulty, or not be as warranted.

In the case of *Ind. Dept. of St. Rev., etc.* v. *Bendix Aviat. Corp.* (1957), 237 Ind. 98, 143 N. E. 2d 91, cert. den. 355 U. S. 607, 78 S. Ct. 539, 2 L. Ed. 2d 524, we said, after a review of the pertinent cases (pp. 113-14 of 237 Ind.) :

> "The *mere knowledge* on the part of the seller in Indiana of the intended out-of-state destination of goods sold and delivered in Indiana to a buyer does not convert an intrastate transaction to an interstate transaction, and thereby create a burden interfering with congressional regulation of such commerce.
>
> . . . . .
>
> "Looking at these facts as a whole before us, the receipts resulted from transactions completely performed in Indiana. The performance was essentially local in character. The tax does not discriminate against interstate commerce nor does it interfere with the grant of power to Congress to regulate commerce among the several states."

We further said:    (p. 105 of 237 Ind.)

> "Of course, a state may not, under the guise of a tax, place a real burden upon commerce among the several states. [Cases cited]"
>
> "At the same time it is not the purpose of the Commerce Clause to relieve those engaged in interstate commerce from their just share of the state tax burden. [Cases cited]"

The judgment of the trial court is reversed, with dirrections to enter judgment for the State.

Landis and Achor, JJ., concur; Jackson, J., dissents with opinion, in which Myers, C. J., concurs.

### DISSENTING OPINION

JACKSON, J.—This is an action instituted by appellee, Shane Manufacturing Company, Inc., against the appellant, Gross Income Tax Division, in the Vanderburgh Circuit Court for the recovery of certain gross income taxes alleged by the appellee to have been wrongfully and illegally collected from receipts said to have been derived from interstate transactions. The action was brought pursuant to the provisions of Acts 1933, ch. 50, §14A, as added by Acts 1955, ch. 165, §2, p. 330, being §64-2614a, Burns' 1961 Replacement. The tax years here involved are 1954, 1955 and 1956; the amount sought to be recovered by this action, inclusive of both principal and interest paid by the appellee, is $7,614.04.

The issues were formed by the filing of appellee's complaint and the filing of appellant's answer. The basic issue to be determined is whether the appellee, an Indiana corporation, manufacturing and selling goods to an out of State purchaser, (the various retail and mail order stores of Sears, Roebuck and Co., situated outside the State of Indiana), is entitled to immunity from the gross income tax because the receipts on which the tax was imposed were from sales to a purchaser who picks up the goods at appellee's manufacturing plant in Evansville, Indiana. The merchandise was there placed in the purchaser's trucks under a commercial bill of lading, and the purchaser acted as a carrier to its retail and mail order stores at destinations outside of the State of Indiana.

The appellant contends:

(1) The source of appellee's receipts upon which the tax was imposed from the sale and delivery of goods to an out-of-state purchaser at a point within Indiana, and the purchaser then carried said goods out of Indiana by its own vehicles.

(2) The purchaser in this instance cannot act in a dual capacity as both purchaser and carrier and thereby exempt the gross receipts of said sales from the Indiana Gross Income Tax Act under the provisions of Acts 1933, ch. 50, as amended, being §64-2606, Burns' 1961 Replacement, or under the commerce clause of the United States Constitution.

(3) That appellee has failed to show that it is entitled to any immunity from the gross income tax assessed by reason of either the commerce clause of the United States Constitution or the provisions of the Indiana Gross Income Tax Act.

The appellee contends:

(a) The State of Indiana is prohibited from taxing its gross income, in the case at bar, by Art. 1, §8, clause 3, of the Constitution of the United States of America.

(b) The taxes imposed on appellee, in the case at bar, are derived from transactions in interstate commerce, constitute a burden upon interstate commerce, and are repugnant to Art. 1, §8, clause 3, of the Constitution of the United States of America.

(c) Appellant is prohibited by §64-2606, Burns' 1961 Replacement, *supra,* from assessing and collecting taxes with respect to the gross receipts from transactions in interstate commerce. By making said assessment and denying appellee's claim for refund appellant has acted in excess of its powers in such a manner

as to render its actions illegal and void under the aforesaid Acts.

On the 19th day of June, 1961, the court entered judgment for appellee, which judgment in pertinent part reads as follows:

"And the Court, having heard the evidence submitted by the parties, and having considered the agreed stipulation of facts, together with the exhibits attached thereto, submitted by the parties, and having heard the argument of counsel, and being duly advised in the premises, now finds for the plaintiff, and that the averments in plaintiff's complaint are true, and that the plaintiff is entitled to recover of and from the defendant the following sums of Indiana Gross Income Tax and interest paid by the plaintiff to the defendant on January 9, 1958, as follows:

"a. For the calendar year 1954 tax in the amount of Two thousand, one hundred twelve dollars and fifty-three cents ($2,112.53) together with interest thereon in the amount of Seven hundred thirty-nine dollars and twenty-five cents ($739.25).

"b. For the calendar year 1955 tax in the amount of Two thousand, Thirty-five Dollars and thirty-two cents ($2,035.32) together with interest thereon in the amount of Four hundred sixty-eight dollars and twelve cents ($468.12).

"c. For the calendar year 1956 tax in the amount of Two thousand, thirty-four dollars and ninety seven cents ($2,034.97) together with interest thereon in the amount of Two hundred twenty-three dollars and eighty-five cents, together with interest thereon at the rate of three per cent (3%) per annum from January 9, 1958, to the date of judgment herein.

"IT IS THEREFORE, CONSIDERED, ADJUDGED AND DECREED by the Court that the plaintiff have and recover of and from the defendant the sum of Seven Thousand, six hundred fourteen dollars and four cents ($7,614.04), together with interest thereron at the rate of three per cent (3%) per annum from January 9, 1958,

to the date of judgment herein, together with the costs of this action herein made and taxed."

On July 14, 1961, appellant filed its motion for a new trial, the grounds therefor being:

"1. The decision of the Court is not sustained by sufficient evidence.

"2. The decision of the Court is contrary to law."

The motion for a new trial was overruled the same day it was filed, and thereupon appellant filed its Praecipe for the record with the clerk of the Court.

Appellant's assignment of error is the single specification that the Court erred in overruling its motion for a new trial.

The factual situation, in the case at bar, is clearly set out in the "Stipulation of Facts" filed in this action, which omitting formal parts thereof and exhibits thereto is as follows:

"It is hereby stipulated and agreed by and between the plaintiff and the defendant in the above entitled cause, by their respective attorneys, that the following facts are true and that this stipulation of facts may be introduced and read into evidence and be considered as part of the evidence at the trial of the above entitled cause:

"1. That the plaintiff, Shane Manufacturing Company, Inc. during all the periods hereinafter mentioned in this complaint, was and is at the present time a corporation organized under and existing by virtue of the laws of the State of Indiana, and had at said times and presently has a business located at 2015 W. Maryland Street in the City of Evansville, County of Vanderburgh, State of Indiana.

"2. That the defendant, Gross Income Tax Division, was at all times hereinafter mentioned in this complaint and is at the present time, an agency and instrumentality of the State of Indi-

ana, to which is assigned the administration and enforcement of the Gross Income Tax Act of 1933 of the State of Indiana, as amended to date.

"3. That the plaintiff reported in writing to the defendant its taxable income for the calendar years ended December 31, 1954, December 31, 1955, and December 31, 1956, in accordance with and as required by the provisions of the Gross Income Tax Act of Indiana; that thereafter the defendant caused an audit and examination to be made of the plaintiff's transactions for the calendar years ended December 31, 1954, December 31, 1955 and December 31, 1956, and thereupon and thereafter the defendant assessed against this plaintiff an additional tax for said periods of time ended December 31, 1954, December 31, 1955 and December 31, 1956, and that said additional tax and assessment for the calendar year ended December 31, 1954, was $2,112.53, for the calendar year ended December 31, 1955, $2,035.32, and for the calendar year ended December 31, 1956, $2,034.97.

"4. That on the 9th day of January, 1958, this plaintiff paid unto the defendant said additional tax so assessed by the defendant and being for the calendar years ended December 31, 1954, December 31, 1955, and December 31, 1956, which said additional tax included gross income tax in the principal amount of $2,112.53 for the calendar year ended December 31, 1954, together with interest thereon in the amount of $739.25, and gross income tax in the principal amount of $2,035.32 for the calendar year ended December 31, 1955, together with interest thereon in the amount of $468.12, and gross income tax in the principal amount of $2,034.97 for the calendar year ended December 31, 1956, together with interest thereon in the amount of $223.85.

"5. That on or about the 20th day of March, 1958, and within three (3) years after the payment of said sum of $2,112.53, together with interest thereon in the amount of $739.25 for the calendar year ended December 31, 1954, and the payment of said sum of $2,035.32, together with interest thereon in the amount of $468.12 for the

calendar year ended December 31, 1955, and the payment of said sum of $2,034.97, together with interest thereon in the amount of $223.85 for the calendar year ended December 31, 1956, and within three (3) years prior to the filing of this action, this plaintiff filed its statement of claim for refund upon a form provided therefor by the defendant, being form Number 111-L-25M-12-49, whereby this plaintiff made application to the defendant that said defendant should correct said assessment for said additional taxes, and refund unto it, the said plaintiff, the said sums of $2,112.53, $2,035.32, and $2,034.97, together with interest assessed against the plaintiff thereon in the sums of $739.25, $468.12, and $223.85, and set out the reasons why said claims for said refund should be allowed; that subsequent to the filing of said statement and claim for refund, and on the 11th day of April, 1958, the plaintiff was notified by the defendant that said petition for refund had been wholly denied.

"6. That the additional assessments for the calendar years ended December 31, 1954, December 31, 1955, and December 31, 1956, were based upon the plaintiff's gross receipts from sales of merchandise to Sears, Roebuck and Co. were made in the following manner:

"(a) Purchase orders for garments manufactured by the plaintiff came from the various mail order and retail stores of Sears, Roebuck and Co. throughout the entire United States from coast to coast. All goods were required to be shipped pursuant to shipping instructions issued by Sears, Roebuck and Co. in a phamphlet entitled 'General Shipping Information,' a copy of which is attached thereto and made a part hereof, and designated 'Exhibit A.'

"(b) All shipments were required to be made f.o.b. plaintiff's plant in Evansville, Indiana, The plaintiff was required to ship via a uniform bill of lading, a sample of which is made a part of 'Exhibit A.'

"(c) All said sales of merchandise were shipped from plaintiff's plant in Evansville, Indiana, to

various mail order and retail stores of Sears, Roebuck and Co. outside the State of Indiana.

"(d) The merchandise shipped by the plaintiff was packaged in cartons by the plaintiff and no inspection of the merchandise by Sears, Roebuck and Co. occurred within the State of Indiana.

"(e) Both as a matter of practice and by virtue of a written agreement by and between plaintiff and Sears, Roebuck and Co. all merchandise shipped by the plaintiff was subject to inspection and rejection by the various retail stores and mail order stores located outside the State of Indiana who ordered the same.

"(f) All said merchandise in the first instance was shipped via trucks owned and operated by Sears, Roebuck and Co. which constituted a part of their traffic division. Said Sears, Roebuck and Co. trucks in all said sales transported the goods directly from plaintiff's plant in Evansville, Indiana, to an intermediary point outside the State of Indiana, where it was shipped by a common or contract carrier from such intermediary point outside of Indiana to its final destination outside the State of Indiana."

We note that other than the above stipulation the only evidence offered was that of Norman A. Shane, Jr., who testified that he was a resident of Evansville, Indiana, was Vice President of appellee, and had been associated with appellee for over fourteen years. He further testified that in 1954 Sears, Roebuck and Company had 699 retail stores, in 1955 it had 707 retail stores, and in 1956 it had 717 retail stores. He also testified this action involved receipts from the sale of goods manufactured and sold by appellee to Sears, Roebuck and Co.; that all of the goods sold Sears, Roebuck and Co. were shipped by Sears, Roebuck and Co. trucks from appellee's Evansville, Indiana, plant; that he personally had seen a great many Sears trucks make these pick-ups at the plant. Mr. Shane

also testified that the number of trailers he had seen at the plant were in excess of forty; and that they operated from Chicago, Illinois.

The appellant predicates its right to impose and collect the taxes in question on the Gross Income Tax Act of 1933, as amended, now being §§64-2601 through §64-2635, Burns' 1961 Replacement, with particular emphasis on §64-2602 and §64-2606.

It is a well established principle of constitutional law that a State may not levy a tax on transactions which will result in an "unnecessary" burden upon interstate commerce. The cases so holding are too numerous and well known to require citation. In the case at bar we are required to determine where the taxable event took place. If the transaction was intrastate in character, i.e., the taxable event taking place within the borders of the State of Indiana, then the receipts from the sales are subject to the imposition of the gross income tax. If, on the other hand, the buyer in one state receives goods shipped by common carrier from a seller in another state, the transaction is interstate in character (the taxable event having occurred in the buyer's state) and the tax will not be permitted. *McGoldrick* v. *Berwind-White Min. Co.* (1939), 309 U. S. 33, 60 S. Ct. 399, 128 A. L. R. 876.

It appears that the determinative question in the case at bar is whether or not Sears, Roebuck and Co. was acting in a "dual capacity" in the transaction. It is clear that if the shipments by the appellee to Sears, Roebuck and Co. had been by a third party common carrier, the transactions would have been interstate in character, the taxable event having occurred outside the State of Indiana where the goods were in fact received by Sears, Roebuck and Co. It is clear from the facts in this case that the trucks, admittedly

owned and operated by Sears, Roebuck and Co., which picked up the goods at appellee's factory carried out the transportation of these goods to the intermediate point in a manner identical to that which would have been used by a third party common carrier. This is evidenced by the fact that a standard bill of lading was used for the shipment. The relationship between appellee and the Sears, Roebuck and Co. trucks was that of consignor-consignee. *In re Globe Varnish Co.* (1940), 114 F. 2d 916, cert. den. 312 U. S. 690.

It is argued by the appellant, the Gross Income Tax Division of Indiana, that it is an impossibility for Sears, Roebuck and Co. to have acted in a dual capacity, and that upon acceptance of the cartons by the truck drivers, agents of Sears, Roebuck and Co., at appellee's plant, the sales were complete and that the taxable event was then complete, all within the confines of the State of Indiana.

It is at this point that the intentions of the parties become important. The fact that the retail outlets, to whom ultimate delivery was to be made, retained the right of inspection and rejection is a strong indication that Sears, Roebuck and Co. did not intend for the transaction to be completed in Indiana. Furthermore, the appellee retained a degree of control over the goods even after they were placed in transit to the extent that Sears, Roebuck and Co. was not allowed to reroute the goods to a retail outlet other than the one which had ordered them. This was to facilitate billing by the appellee, which was not done until after the goods reached their ultimate destination.

It seems clear that both parties intended an interstate transaction, and that in fact one resulted from their acts.

The judgment should be affirmed.

Myers, C. J., concurs.

NOTE.—Reported in 191 N. E. 2d 310.