ASSOCIATED MILK PRODUCERS, INC., Petitioner–Appellant,

v.

INDIANA DEPARTMENT OF STATE REVENUE, Respondent–Appellee.

No. 34S05–8712–TA–1194.

Supreme Court of Indiana.

March 1, 1989.

John A. St. Peter, Paul W. Rosenfeldt, Edgarton, Ondrasek, St. Peter, Petak & Massey, Fond du Lac, Wis., Steven M. Jessup, Russell, McIntyre, Jessup, Shrock, Hilligoss & Raquet, Kokomo, for petitioner-appellant.

Linley E. Pearson, Atty. Gen., Marilyn S. Meighen, Deputy Atty. Gen., Indianapolis, for respondent-appellee.

DeBRULER, Justice.

This case is before us on a direct appeal from a decision in the Indiana Tax Court pursuant to I.C. 33-3-5-15. In that court Judge Fisher found that certain business transactions of the appellant Associated Milk Producers, Inc. (AMPI) were local in nature and therefore AMPI was not entitled to an exemption from Indiana's Gross Income Tax as provided for in 45 I.A.C. 1-1-119. We affirm.

AMPI is a farmer-owned cooperative with headquarters in Texas. It operates in Indiana as well as other states. Its Indiana facility is located in Warsaw, Indiana where cheese is manufactured and sold to Borden, Inc. plants in Ohio and Wisconsin. For the sales in question here, the cheese was loaded onto Borden's trucks in Warsaw and driven to the out-of-state facilities where Borden tested it to make sure it conformed to its needs. AMPI was assessed gross income tax on the income it received from these sales in 1979, 1980 and 1981, but not on income received for sales in which the cheese was delivered to Borden by common carrier. In 1986, AMPI filed a claim for refund for $99,452.99 from the appellee Indiana Department of State Revenue based on the taxes it paid on income from sales in which Borden's trucks took delivery of the cheese. The claim was denied. AMPI appealed the Department's decision to the Indiana Tax Court arguing that the sales in question were not consummated in Indiana and that, under 45 I.A.C. 1-1-119, the income received from such sales was exempt from Indiana's gross income tax.

AMPI again claims here that the sales in question were not consummated in Indiana and were therefore not local in nature and were exempt from taxation under the Department's regulations. To this end, it maintains that under Indiana's Uniform Commercial Code, the transactions were "sales on approval," that no contract for a sale existed until the cheese had been tested and accepted in Ohio and that the delivery of cheese to Borden's trucks did not effect transfer of title to Borden. It also claims that Indiana's Uniform Commercial Code is not controlling in determining transfer of title for purposes of taxability and that taxation of the transactions in question is prohibited by the Commerce Clause of the Constitution of the United States.

At the outset, it should be noted that AMPI's burden on appeal is an onerous one. This Court will overturn the decision of the court below only if it was clearly erroneous, *In Re Wardship of B.C.* (1982), Ind., 441 N.E.2d 208; and "due regard shall be given to the opportunity of the Tax Court to judge the credibility of the witnesses." Indiana Tax Court Rule 10. A finding is clearly erroneous if, considering the record as a whole, the reviewing court is left with the definite and firm conviction that a mistake was made, even though there is some evidence to support the finding below. *First Federal Savings and Loan Association of Gary v. Stone* (1984), Ind.App., 467 N.E.2d 1226.

AMPI is engaged in interstate commerce, however that fact alone does not exempt it from paying its fair share of state and local taxes. I.C. 6-2.1-3-3 provides that interstate business transactions

are exempt from gross income tax "to the extent the State of Indiana is prohibited from taxing that gross income by the United States Constitution." The Supreme Court has held that so long as a local transaction is made the taxable event and the event is separate and distinct from the transportation or intercourse which is interstate commerce, the tax will not run afoul of the Commerce Clause of the Constitution. *International Harvester Co. v. Department of Treasury of State of Indiana*, 322 U.S. 340, 64 S.Ct. 1019, 88 L.Ed. 1313 (1944). The Department has promulgated regulations consistent with the *International Harvester* decision. 45 I.A.C. 1–1–116 states in part:

As a general rule, income derived from sales made by Indiana sellers to out-of-state buyers is not subject to gross income tax unless the sales are completed in Indiana. Below is a list of some of the more common outshipment situations with an indication of taxability of each:

\* \* \* \* \* \*

(2) Taxable Outshipments

\* \* \* \* \* \*

(b) Sales to nonresidents where the goods are accepted by the buyer or he takes actual delivery within the State.

In *Gross Income Tax Division v. Shane Manufacturing Co.* (1963), 244 Ind. 279, 191 N.E.2d 310, this Court was confronted with a situation almost identical to the one here. Shane manufactured products for Sears, Roebuck & Company and delivered them to Sears' trucks at Shane's Evansville plant. Sears did not inspect the goods until they arrived at its out-of-state retail stores. In upholding the validity of the gross income tax on the income from these transactions, we applied the holding of the *International Harvester* decision and stated:

The physical and actual delivery of the goods occurred at the Shane Manufacturing Company's plant in Indiana when the products were turned over to Sears' trucks. . . .

The mere fact that Sears, Roebuck & Company did not see fit to inspect the products at the time of the delivery, but rather waited until they reached a retail store, does not alter the fact that title was transferred at the time of delivery in Evansville.

Id., 191 N.E.2d at 312.

AMPI's contentions that *Shane* is not controlling because the transactions taxed were "sales on approval" and delivery did not effect transfer of title are not persuasive. I.C. 26–1–2–326 provides that where goods can be returned to the buyer even though they conform to the contract they are "sales on approval" if the goods are delivered primarily for use. I.C. 26–1–2–401 states:

Insofar as situations are not covered by the other provisions of this Article and matters concerning title become material the following rules apply:

\* \* \* \* \* \*

(2) Unless otherwise explicitly agreed title passes to the buyer at the time and place at which the seller completes his performance with reference to the physical delivery of the goods. . . .

To show that it had "otherwise explicitly agreed," AMPI introduced testimony that Borden did not accept the cheese until it passed Borden's testing standards and that it was the industry custom that title and risk of loss did not pass until the cheese was accepted by the seller. However there was no evidence of an explicit agreement between AMPI and Borden. Nor was there unconflicting testimony on Borden's right to return conforming goods to AMPI. The testimony was at best ambiguous and, since we will not reweigh the evidence on appeal, we can hardly say that we are left with a definite and firm conviction that a mistake has been made. Rather, we agree with Judge Fisher that the evidence tended to show merely that Borden had wide latitude to determine whether the cheese conformed to the contract and to subsequently reject it if it was nonconforming.

■ Next AMPI contends that title could not transfer at delivery because there was no contract for sale at the time of delivery since price was not set until after Borden tested and accepted the cheese and inspection did not occur until the cheese reached

Ohio. Under I.C. 26-1-2-204, a contract for the sale of goods may be made in any manner sufficient to show agreement between the parties and a contract does not fail simply because one or more terms are left open. The conduct of the parties here clearly indicates a contract was formed. It appears that AMPI was contacted on a weekly basis by Borden to determine the quantity of cheese available and then Borden usually sent a truck to pick up the product. Price for the cheese that conformed to the contract was agreed to be the market rate. Furthermore, that inspection did not occur until after delivery has no bearing on whether a contract was formed. Inspection is merely a right of the buyer to determine whether the goods conform to the contract. It may be exercised at the time of delivery, upon arrival of the goods, or later if the parties so agree. I.C. 26-1-2-513.

While we agree with AMPI that Indiana's Uniform Commercial Code is not controlling in determining passage of title for purposes of taxation, we fail to see how AMPI is helped by this contention. Divorced of a reliance on the Uniform Commercial Code as persuasive authority, one is left with the regulations of the Department as guidelines. As noted above, 45 I.A.C. 1-1-119 provides an exemption as a general rule for income from sales to out-of-state buyers but goes on to allow taxation of income from sales where actual delivery is made to the buyer in Indiana. AMPI asks us to give them the benefit of the first part of the regulation and in the same breath asks us to ignore the latter part. To do so would simply make no sense. The facts of the present case are indistinguishable from those in *Shane*. In both cases products were sold to out-of-state buyers, the products were loaded onto the buyer's trucks in Indiana and not inspected until they reached their out-of-state destination. Given this similarity, the Tax Court did not err in denying AMPI's claim for refund.

█ In its final claim, AMPI attempts to raise a constitutional objection to the tax. It argues that the transactions here are distinguishable from those in the *International Harvester* case and therefore are interstate and constitutionally exempt from taxation under the Commerce Clause. In so doing, AMPI relies on its original argument that the transactions were "sales on approval" and that the agreements to sell did not take place in Indiana and were contingent on some event occurring outside the State. We have already resolved these issues above and in *Shane;* and therefore, AMPI's constitutional objection must fail. AMPI did not meet its burden of proving that the transactions were "sales on approval" and in *Shane* we found *International Harvester* applicable to sales in which inspection did not occur until the goods reached their out-of-state destinations. Assuming *arguendo* that the sales were not local in nature, they are still not necessarily constitutionally exempt from the gross income tax under the Commerce Clause. To this extent, the statement of the court below that mere delivery to a common carrier would make the transaction completely exempt under the Commerce Clause is subject to question. *Associated Milk Producers v. Department of State Revenue* (1987), Ind.Tax, 512 N.E.2d 917, 919 n. 2. While Indiana's tax regulations, 45 I.A.C. 1-1-119, as a general rule prohibit taxation of income derived from sales to out-of-state buyers, the Commerce Clause does not so long as there is a sufficient nexus to the state, the tax is fairly apportioned, does not discriminate against interstate commerce in favor of local commerce and is fairly related to the services provided by the state. *Complete Auto Transit, Inc. v. Brady*, 430 U.S. 274, 97 S.Ct. 1076, 51 L.Ed.2d 326 (1977); *Goldberg v. Sweet*, —— U.S. ——, 109 S.Ct. 582, 102 L.Ed.2d 607 (1989); *Gross Income Tax Division v. P.F. Goodrich Corporation* (1973), 260 Ind. 41, 292 N.E.2d 247. However, this issue has not been presented on appeal and we therefore do not now decide it.

The judgment of the Tax Court is affirmed.

SHEPARD, C.J., and GIVAN, PIVARNIK and DICKSON, JJ., concur.