**HOOSIER ENERGY RURAL ELEC-
TRIC COOPERATIVE, INC.,
Appellant (Petitioner Below),**

v.

**INDIANA DEPARTMENT OF STATE
REVENUE, Appellee
(Respondent Below).**

**No. 53S00–8904–TA–269.**

Supreme Court of Indiana.

May 29, 1991.

J. David Huber, Zoercher, Huber & McEntarfer, Tell City, for appellant.

Linley E. Pearson, Atty. Gen. and Joel Schiff, Deputy Atty. Gen., Indianapolis, for appellee.

KRAHULIK, Justice.

This is a direct appeal from the Indiana Tax Court's decision to uphold the imposition of the State's gross income tax on the proceeds of an interstate sale of federal income tax benefits. *Hoosier Energy Rural Electric Cooperative, Inc. v. Indiana Department of State Revenue* (1988), Ind. Tax, 528 N.E.2d 867. At issue is whether the Indiana Department of State Revenue ("Department") can collect a state income tax on the proceeds of this interstate sale of federal income tax benefits. Specifically, four issues are presented for review:

1. Whether the Department made a timely tax assessment for purposes of the applicable three year statute of limitations set forth in IND.CODE § 6–8.1–5–2(a) (1989);

2. Whether the income derived from this transaction can be taxed by the state of Indiana without violating Ind. Code § 6–2.1–3–3 and the commerce clause of the federal constitution, U.S. CONST., art. I, § 8, cl. 3;

3. Whether the Tax Court erred in admitting certain evidence; and

4. Whether the Tax Court failed to make special findings of fact pursuant to IND. TAX COURT RULE 10 A(2).

In 1982, Hoosier Energy Rural Electric Cooperative, Inc. ("Hoosier"), an Indiana corporation, sold its rights to claim certain federal income tax benefits to Amoco Tax Leasing IV Corporation ("Amoco"), a Delaware corporation with its principal office in Illinois and J.C. Penney Company ("Penney"), a Delaware corporation with its principal office in New York City. The pertinent facts underlying this transaction are that Hoosier, pursuant to INT.REV.CODE § 168(f) sold to Amoco and Penney certain federal income tax benefits based upon and arising out of its ownership of personal property located at Hoosier's Indiana generating station. The transaction was struc-

tured as a sale-lease back of the property. Title to the property, however, at all times remained with Hoosier. The parties negotiated the value of the tax benefits to be paid "up-front" in cash. The remaining balance due to be paid to Hoosier for the property equalled the lease payments that Hoosier was to pay back to the purchasers—a wash. The total "sales price" of the property was $632,153,389, of which only $196,318,566 (the value of the income tax benefits sold) was actually received by Hoosier in the form of "up-front" cash.

The Department originally assessed gross income taxes on the entire sales price of $632,153,389, but, after further discussions with Hoosier, agreed that only the $196,318,566 cash received for the sale of the federal income tax benefits was subject to the state's gross income tax. A second assessment was issued which assessed gross income tax only on this lesser amount. At all times Hoosier has contended that the taxation of the income received from this interstate sale of tax benefits was prohibited by the commerce clause. Nevertheless, Hoosier paid the assessed tax in full, filed its claim for refund, and appealed the Department's denial of the refund claimed.

### I. *Statute of Limitations*

■ Hoosier contends that the Department's tax assessment was untimely because it was not brought within the applicable three year statute of limitations. IND. CODE § 6–8.1–5–2(a) provides, in pertinent part, as follows:

Except as otherwise provided in this section, the department may not issue a proposed assessment under section 1 of this chapter more than three (3) years after the latest of the date the return is filed, or any of the following:

(1) the due date of the return....

The Department actually made two assessments, one within the three year period and one beyond. The pertinent dates are:

September 9, 1983—date appearing on Hoosier's 1982 tax return;

June 4, 1985     —issuance of the Department's first assessment: $632,153,389; and

March 3, 1987     —issuance of the Department's second assessment: $196,318,566.

The issue is whether the Department's second assessment relates back to the date of the first assessment. The Tax Court held that it did. It based its finding on the theory that the second assessment was merely a reduction of the original assessment. We agree.

The Department sought to tax the income derived from the entire "sale" of equipment, etc., in the first assessment. After various negotiations between the Department and Hoosier, the Department agreed that this sale was subject to the "safe-harbor" provisions of I.R.C. § 168(f) and, therefore, not taxable, but continued to contend that the "up-front" money was taxable as gross income. Hoosier continuously argued that this "up-front money" was exempt from state taxation because it was income derived from an interstate sale. Thereafter, the Department made a second assessment, this time on the "up-front" money alone. This second assessment occurred more than three years after Hoosier's original state income tax return was filed.

Hoosier contends that the Department's first assessment was for the "sale" of equipment and nothing more. Hoosier argues that this "sale" never took place because title to the equipment remained in Hoosier. Because the "sale" never took place, Hoosier maintains, the Department's first assessment had to be scrapped entirely and a second assessment on the "up-front" money alone had to be made. If there was never a sale of equipment, Hoosier argues, then the value of the federal income tax benefits could not have been included in the original "sales price." Hoosier relied on Auditor Roark's testimony that, on the first assessment, he initially wanted to tax the "up-front" money rather than the ficticious sale of equipment, but was overruled by his supervisors who instructed him to tax the entire "sale."

Moreover, in the second assessment, the entire sales price of the first assessment was deducted and then the price of the federal income tax benefits was added. This, Hoosier maintains, proves that the "up-front" money was not included in the first assessment. From this accounting, Hoosier charges the Department with an untimely assessment of the proceeds derived from the sale of the federal income tax benefits.

Hoosier carries a heavy burden on appeal. T.C. RULE 10 provides that this Court "shall not set aside the findings or judgment of the Tax Court unless clearly erroneous, and due regard shall be given to the opportunity of the Tax Court to judge the credibility of witnesses." Here, Hoosier, in reality, is asking us to reweigh the evidence received by the Tax Court. We refuse to do so. Hoosier challenges the credibility of the Department's witnesses and the weight to be given their testimony. Hoosier regards the auditors' claims that the Department intended to include the "up-front" money in the initial assessment as nothing more than "hindsighted intentions" and "opinion evidence." The Tax Court was in the best position to observe the witnesses who worked on these assessments. After considering the record as a whole, we are not convinced that the Tax Court's findings are clearly erroneous or that a mistake was made. Consequently, we refuse to reverse on this issue.

## II. Constitutional, Statutory and Regulation Propriety of The Tax

### A. Commerce Clause

■ Hoosier contends that the Department cannot tax the proceeds of this transaction without running afoul of the commerce clause of the federal constitution, U.S. CONST., art. I, § 8, cl. 3. Hoosier maintains that this interstate sale of federal income tax benefits is exempt from state taxation pursuant to the above-cited statute and the commerce clause. Merely because the sale was made to two out-of-state purchasers does not necessarily mean that the proceeds are *ipso facto* exempt from Indiana state income tax. The United States Supreme Court, in *Complete Auto Transit, Inc. v. Brady* (1977), 430 U.S. 274, 97 S.Ct. 1076, 51 L.Ed.2d 326, expressly rejected the proposition that interstate commerce is immune from state taxation and set forth a four-part test to be applied to state tax laws which target income derived from out-of-state sales. This Court, in *Associated Milk Producers, Inc. v. Indiana Department of State Revenue* (1989), Ind., 534 N.E.2d 715, noted, in dictum, the *Complete Auto* four-part test:

> While Indiana's tax regulations, 45 [IND. ADMIN.CODE] 1–1–119, as a general rule prohibit taxation of income derived from sales to out-of-state buyers, the Commerce Clause does not so long as there is a sufficient nexus to the state, the tax is fairly apportioned, does not discriminate against interstate commerce in favor of local commerce and is fairly related to the services provided by the state. *Complete Auto Transit, Inc. v. Brady*, 430 U.S. 274, 97 S.Ct. 1076, 51 L.Ed.2d 326 (1977); *Goldberg v. Sweet*, [488] U.S. [252], 109 S.Ct. 582, 102 L.Ed.2d 607 (1989); *Gross Income Tax Division v. P.F. Goodrich Corporation* (1973), 260 Ind. 41, 292 N.E.2d 247. However, this issue has not been presented on appeal and we therefore do not now decide it.

*Associated Milk*, 534 N.E.2d at 718.

■ We believe that the Tax Court correctly decided that *Complete Auto* governs the instant case. Hoosier's reliance on *Freeman v. Hewit* (1946), 329 U.S. 249, 67 S.Ct. 274, 91 L.Ed. 265, and *Indiana Department of State Revenue v. Nebecker* (1953), 233 Ind. 58, 116 N.E.2d 104, *aff'd* (1955), 348 U.S. 933, 75 S.Ct. 354, 99 L.Ed. 731, for the proposition that all income derived from interstate sales is exempt from state taxation, is misplaced. These cases predate *Complete Auto* by thirty-one and twenty-four years, respectively. *Nebecker* was based to a large extent on *Freeman*, a case whose precedential value has been called into question by *Complete Auto*. Accordingly, we believe that *Complete Auto*, not *Freeman* or *Nebecker*, is the preferred case to utilize in determining the constitutionality of the tax.

The question of the constitutionality of this interstate sale of tax benefits therefore must be answered by whether the tax complies with the four-part test set forth in *Complete Auto.*

(1) *Is there a sufficient nexus to the State?*

■ There can be no doubt but that Hoosier and its property have both its business situs and commercial situs located wholly within the State of Indiana. Hoosier argues that it is the situs of the intangible and not of the taxpayer which should control. The intangible which was sold, federal income tax benefits, cannot exist separate and apart from the taxpayer and property which, with the aid of IRC § 168(f), created the intangible. Therefore, the taxation of this sale complies with the first prong of the *Complete Auto* test.

(2) *Is the tax fairly apportioned?*

■ This, according to Hoosier, is the Achilles' heel of the Department's argument in favor of the constitutionality of the tax. As a general proposition, a state tax on interstate commerce must be fairly apportioned to prevent excessive taxes on such sale as each state takes its bite out of the interstate transaction as it passes through each taxing state. To avoid this unfair impediment to interstate commerce, the Constitution requires that state taxes on interstate commerce be apportioned according to the relationship of the state to the total transaction. Hoosier points to the fact that here the sale was facilitated by New York investment bankers, that all negotiations for the sale were held in New York, and that the "up-front" money was transferred to Hoosier's New York bank accounts to support its argument that New York might seek to tax the proceeds of this sale. Thus, reasons Hoosier, Indiana should not be allowed to tax the entire sale, but can only tax its portion of the sale. We do not disagree with this reasoning. We also agree with the Tax Court's finding that New York does not present a substantial or real risk of taxation in a constitutional sense. A tax by New York on this sale would not pass two of the *Complete Auto* tests. First, a New York tax on this sale of an intangible with a business situs in Indiana would not be fairly related to services provided by New York. Secondly, New York does not have sufficient nexus to the creation of the intangible to be able to tax its sale. Hoosier has not proven that this sale is exposed to any substantial risk of being taxed by New York or any other state. Therefore, we hold that the evidence supports the conclusion that the imposition of the tax at issue meets the apportionment requirement of *Complete Auto.*

(3) *Does the tax discriminate against interstate commerce in favor of local commerce?*

The state gross income tax does not discriminate against interstate commerce in favor of local commerce. As the Tax Court correctly found, there is nothing in the operation of the tax that places a greater burden on out-of-state taxpayers than is placed on in-state taxpayers.

(4) *Is the tax fairly related to the services provided by the State?*

Obviously, citizens of the State of Indiana are expected to contribute their fair share of the state tax burden which pays for the multitude of services provided to the citizens by the State. There was no evidence presented to the Tax Court which would in any way show that this tax is not fairly related to the services provided by the State. Therefore, this tax on this sale passes the fourth part of the *Complete Auto* test.

By applying the *Complete Auto* test to the facts of this case as found by the Tax Court, we conclude that the Tax Court was correct in deciding that the taxing of Hoosier's sale of its federal income tax benefits complies with the United States Constitution.

B. *Statute*

■ Hoosier also contends that the tax in this case violates IND.CODE § 6–2.1–3–3 and 45 IND.ADMIN.CODE 1–1–119 and, therefore, cannot stand. Ind.Code § 6–2.1–3–3 provides that gross income derived from business conducted in interstate commerce

is exempt from gross income tax "to the extent the State of Indiana is prohibited from taxing that gross income by the United States Constitution." In view of our express holding that this tax, as applied to this sale, is not prohibited by the United States Constitution, we must, necessarily, hold that it does not violate IND.CODE § 6–2.1–3–3.

## C.  *Regulations*

■  Hoosier urges us to find that the Department violated its own regulation, 45 I.A.C. 1–1–119, in taxing this sale. Such regulation, entitled "interstate sale of goods to out-of-state buyer" states that sales of stock to non-residents as well as margin transactions and dealings in commodities futures carried on through securities exchanges in other states are examples of sales which are not subject to Indiana gross income tax. We agree with the Tax Court that the Department regulation which specifically deals with intangibles which have their situs in Indiana, 45 I.A.C. 1–1–51, is controlling in this case, not 45 I.A.C. 1–1–119. We also should note that 45 I.A.C. 1–1–119 is premised upon *Freeman v. Hewit, supra,* and *Nebecker, supra,* both of which have been distinguished and replaced by *Complete Auto.* For those reasons, we are not convinced that the Department's regulations prohibit the Department from taxing this sale.

We agree completely with the Tax Court's decision that the tax levied in this case is not prohibited by the commerce clause of the United States Constitution or by Indiana statutes or regulations.

## III.  *Admission of Evidence*

■  Hoosier sets forth as error the fact that the Tax Court admitted certain exhibits and testimony into evidence at the *de novo* hearing held by the Tax Court. The basic premise of Hoosier's argument is that the exhibits consisted of audit forms and work papers which were generated and completed in connection with the "first assessment" and, thus, are not relevant to the issue of whether or not the Department's "second" assessment was lawful. As the Tax Court correctly held, the second assessment is merely a reduction in taxa-

tion from the first assessment and, therefore, these work papers were relevant and material to the issues being presented at trial. We agree with this analysis and further point out that the Tax Court, as any other trial court, is allowed a wide range of discretion in the admission or rejection of evidence.

■  Hoosier also objected to testimony of Department witnesses who were called to interpret and explain the audit workpapers involved in the audit of this sale. The premise of Hoosier's argument was that the best evidence was the papers themselves and that no parol evidence was necessary or proper to explain and interpret these papers. The Tax Court overruled the objections to such testimony and found that such testimony was helpful to the Tax Court in comprehending the audit workpapers. Again, we agree with the Tax Court and, frankly, fail to see how the Tax Court or any other trier of fact could interpret the audit workpapers without the aid of such testimony.

There was no error in the admission of evidence.

## IV.  *Special Findings of Fact*

Finally, Hoosier contends that the Tax Court failed to make special findings of fact as required by T.C. RULE 10. We disagree. T.C. RULE 10 requires that special findings of fact be made, but that it will be sufficient if the findings of fact and conclusions appear within the opinion or memorandum of decision filed by the Tax Court. We find that the opinion of Judge Fisher more than complies with Ind. Tax Court Rule 10 because the findings of fact and conclusions of the Tax Court appear within its written opinion. The requirement of T.C. RULE 10 has been met.

We affirm the decision of the Tax Court.

SHEPARD, C.J., and DeBRULER, GIVAN and DICKSON, JJ., concur.