**DAVID R. WEBB COMPANY, INC., Petitioner,**

v.

**INDIANA DEPARTMENT OF STATE REVENUE, Respondent.**

No. 49T10–0310–TA–50.

Tax Court of Indiana.

April 25, 2005.

Larry J. Stroble, Randal J. Kaltenmark, Barnes & Thornburg LLP, Indianapolis, IN, Attorneys for Petitioner.

Steve Carter, Attorney General of Indiana, Andrew W. Swain, Special Counsel, Amber Merlau St.Amour, Deputy Attorney General, Indianapolis, IN, Attorneys for Respondent.

### ORDER ON PARTIES' CROSS–MOTIONS FOR SUMMARY JUDGMENT

FISHER, J.

The David R. Webb Company, Inc. (Webb) appeals the Indiana Department of

State Revenue's (Department) final determination assessing it with additional gross income tax liability for the years ending December 31, 1995, December 31, 1996, and December 31, 1997 (the years at issue). The matter, currently before the Court on the parties' cross-motions for summary judgment, presents the following issue for review: whether the Department erred in finding that Webb's sales to out-of-state purchasers were local transactions subject to Indiana's gross income tax.

## MATERIAL FACTS

The material facts as they relate to this case are undisputed. Webb is a Nevada corporation with its principal place of business in Edinburgh, Indiana. Webb manufactures and sells wood veneer. During the years at issue, Webb sold veneer to customers who were based and located outside the United States (Foreign Customers); these transactions are the subject of this litigation (sales at issue).

As part of their purchasing process, the Foreign Customers sent representatives to Webb's Edinburgh facility to examine the veneer. On the basis of that examination, the representatives selected the desired bundles of veneer for purchase and signed sales agreements with Webb. The terms of the sales agreements were either "C & F/CIF" or "FOB New York/FOB Miami."

In the "C & F/CIF" sales agreements, Webb's quoted sales price reflected the cost of the veneer, freight to the designated foreign port (Port of Destination), and insurance (if required). Pursuant to these agreements, Webb: 1) transported the selected veneer from its Edinburgh facility to a United States port (Port of Shipment), via a common carrier; 2) loaded the veneer onto a ship at the Port of Shipment; 3) paid the veneer's freight to the Port of Destination; 4) procured insurance on the veneer (if required); and 5) obtained a bill of lading[1] from the ship owner. Webb would then send the bill of lading, an invoice, and a packing list (shipping documents) to the Foreign Customer. After the veneer arrived at the Port of Destination, the Foreign Customer tendered the shipping documents, inspected the veneer, and took physical possession thereof.

In the "FOB" sales agreements, Webb's quoted sales price reflected the cost of the veneer only.[2] Under these agreements, Webb was required, at its own expense and risk, to transport the selected veneer from its Edinburgh facility to either Miami or New York (i.e., the Port of Shipment). Once at the Port of Shipment, the Foreign Customer "took delivery" of the veneer and arranged (and paid) for the veneer's subsequent transportation to the Port of Destination. *Cf. with* IND.CODE ANN. § 26–1–2–319(1)(b) (West 1995) (stating that "[w]hen the term is F.O.B. [which means 'free on board'] the place of destination, the seller must at his own expense and risk transport the goods to that place and there tender delivery of them").

The sales agreements between Webb and its Foreign Customers contained various payment terms. The majority of sales agreements required payment from the Foreign Customer within a specified number of days from the date of the bill of lading. The remainder of the sales agreements required the Foreign Customer to

---

1. The bill of lading listed Webb (or its shipping agent) as the "shipper," the date the ship was anticipated to leave the Port of Shipment (sailing date), and indicated that the freight had been paid. *Cf. with* IND.CODE ANN § 26–1–2–320 (West 1995).

2. The shipping charges for "FOB" transactions were listed as separate charges in the invoices.

make payment upon receipt of the bill of lading, invoice, and other shipping documents.

## PROCEDURAL HISTORY

When Webb filed its Indiana corporate income tax returns for the years at issue, it did not report the income from the sales at issue, as it believed that income was exempt from gross income tax because it was earned in interstate commerce. After conducting an audit, however, the Department held that the sales at issue were local in nature and, as a result, the income earned therefrom was subject to gross income tax. The Department subsequently issued proposed assessments against Webb, including interest and penalties.

Webb timely protested the proposed assessments. On May 22, 2003, after conducting a hearing on the matter, the Department issued a letter of findings in which it denied Webb's protest.[3]

Webb initiated this original tax appeal on October 29, 2003. On September 13, 2004, Webb filed a motion for summary judgment. The Department filed a cross-motion for summary judgment on December 22, 2004. The Court conducted a hearing on the parties' motions on March 24, 2005. Additional facts will be supplied as necessary.

## STANDARD OF REVIEW

This Court reviews the Department's final determinations de novo and is therefore not bound by either the evidence presented or the issues raised at the administrative level. IND.CODE ANN. § 6-8.1-5-1(h) (West Supp.2004-2005). Summary judgment will be granted if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C). Cross motions for summary judgment do not alter this standard. *Id.; Williams v. Indiana Dep't of State Revenue,* 742 N.E.2d 562, 563 (Ind. Tax Ct.2001).

## DISCUSSION AND ANALYSIS

During the years at issue, Indiana imposed a tax on the gross income of taxpayers domiciled in Indiana. *See* IND.CODE ANN. § 6-2.1-2-2 (West 1997) (repealed 2002). Nevertheless, the "[g]ross income derived from business conducted in commerce between the state of Indiana and either another state or a foreign country [wa]s exempt from gross income tax to the extent the state of Indiana [wa]s prohibited from taxing that gross income by the United States Constitution." IND.CODE ANN. § 6-2.1-3-3 (West 1997) (repealed 2002).

As this Court has previously explained, the Commerce Clause of the United States Constitution[4] prohibits state taxation in a manner that discriminates against or unduly burdens interstate commerce. *See Hi-Way Dispatch, Inc. v. Indiana Dep't of State Revenue,* 756 N.E.2d 587, 603 (Ind.Tax Ct.2001) (internal quotation and citation omitted). This does not mean, however, that interstate commerce is completely immune from state taxation. Rather, as the United States Supreme Court has held, interstate commerce must bear its fair share of state and local tax burdens. *See Int'l Harvester Co. v. Dep't of Treasury,* 322 U.S. 340, 346, 64 S.Ct. 1019, 88 L.Ed. 1313 (1944). Consequently, so long as "a local transaction is

---

3. In a letter dated July 28, 2003, however, the Department waived the penalty portion of its assessment.

4. The Commerce Clause provides in part that Congress shall have the power "[to] regulate Commerce ... among the several States[.]" U.S. CONST. art. I, § 8, cl. 3.

made the taxable event and that event is separate and distinct from the transportation or intercourse which is interstate commerce[,]" a state tax will not run afoul of the Commerce Clause. *Id.*

The Department promulgated regulations, in effect during the years at issue, which interpreted the interstate commerce exemption from gross income tax. The regulations provided that "[a]s a general rule, income derived from sales made by Indiana sellers to out-of-state buyers is not subject to gross income tax unless the sales are completed in Indiana." IND. ADMIN. CODE tit. 45, r. 1–1–119 (1992 & 1996). The regulations also provided the following specific guidelines for determining the taxability of income earned in certain sales transactions:

> Sales to nonresidents where the seller, upon receipt of a prior order and as part of the contract, ships the goods from a point within or without Indiana to an out-of-state destination [are not taxable]. Such sales are exempt from taxation whether shipment is made by the seller in his own conveyance, by his contract carrier or by common carrier, and whether the shipment is made on bills of lading showing the seller, buyer or a third party as the shipper of record. *See J.D. Adams Mfg. Co. v. Storen,* 304 U.S. 307, 58 S.Ct. 913, 82 L.Ed. 1365 (1938).

> \* \* \* \* \* \*

> Sales to nonresidents where the goods are accepted by the buyer or he takes actual delivery within the State [are taxable]. *See [Dep't] of Treasury v. Wood Preserving Corp.,* 313 U.S. 62, 61 S.Ct. 885, 85 L.Ed. 1188 (1941), and *[Int'l] Harvester Co. v. [Dep't] of Treasury,* 322 U.S. 340, 64 S.Ct. 1019, 88 L.Ed. 1313 (1943). Sales will also be taxable if the goods are shipped out of state on bills of lading showing the seller, buyer or a

third party as shipper if the goods were inspected and accepted ... prior to shipment in interstate commerce.

45 IAC 1–1–119(1)(a); 45 IAC 1–1–119(2)(b).

■ The Department asserts that the sales at issue were completed in Indiana and the resulting income is, therefore, taxable pursuant to 45 IAC 1–1–119(2)(b). (*See* Resp't Br. In Resp. to [Pet'r] Mot. for Summ. J. and In Supp. of [Its] Cross Mot. for Summ. J. (hereinafter, Resp't Br.) at 6.) Specifically, the Department contends that the sales at issue were completed in Indiana when the Foreign Customers' representatives physically came to Edinburgh, Indiana, "inspected" the wood veneer, and then "accepted" it when they signed the sales agreements. (*See* Resp't Br. at 12–13.)

Webb, in challenging the imposition of the tax, claims that the Department has improperly expanded the holdings in *Wood Preserving* and *International Harvester* to include in-state inspection and acceptance as adequate taxable events under 45 IAC 1–1–119(2)(b). Rather, Webb asserts that those cases stand for the sole proposition that a sale cannot be completed prior to the buyer taking actual physical delivery of the purchased goods. (*See* Pet'r Br. In Supp. of Its Mot. for Summ. J. (hereinafter, Pet'r Br.) at 8–12.) In turn, because Webb's Foreign Customers "never took physical delivery [of the veneer] until they received [it] at the Ports of Destination[,]" the sales at issue were clearly not completed in Indiana. (*See* Pet'r Br. at 8, 12.) As a result, Webb maintains the sales at issue are nontaxable pursuant to 45 IAC 1–1–119(1)(a).

The United States Supreme Court's decisions in *Wood Preserving* and *International Harvester* hold that a sales transaction is deemed completed in Indiana upon

delivery in Indiana to an out-of-state buyer, despite the fact that the goods are taken immediately outside the state. *See Gross Income Tax Div. v. Shane Mfg. Co.*, 244 Ind. 279, 191 N.E.2d 310, 311 (1963). Indeed, as the Indiana Supreme Court explained:

In the case of ... Wood Preserving Corp.[,] ... an Indiana corporation sold to the Baltimore & Ohio Railroad Company railroad ties which were *delivered in the State of Indiana.* The ties were then carried by the purchasing railroad out of Indiana to be used at various points outside the state. The [U.S. Supreme C]ourt, in determining whether or not the sale of ties by the Wood Preserving Corporation was taxable, stated:

'These were local transactions—sales and deliveries of particular ties by respondent to the Railroad Company in Indiana. The transactions were none the less intrastate activities because the ties thus sold and delivered were forthwith loaded on the railroad cars to go to Ohio for [creosoting] treatment. The contract providing for that treatment called for the treatment of ties to be delivered by the Railroad Company at the Ohio plant, and the ties bought by the Railroad Company in Indiana, as above stated, were transported and delivered by the Railroad Company to that treatment plant. Respondent did not pay the freight for that transportation and the circumstance that the billing was in its name as consignor is not of consequence in the light of the facts showing the completed delivery to the Railroad Company in Indiana.'

In the case of International Harvester[,] ... the International Harvester Company made sales to out-of-state dealers who came into Indiana and took deliv-

ery. The [U.S. Supreme C]ourt said in that case:

'The Class D sales are sales by an Indiana seller of Indiana goods to an out-of-state buyer who comes to Indiana, takes delivery there and transports the goods to another State. The Wood Preserving Corp. case indicates that it is immaterial to the present issue that the goods are to be transported out of Indiana immediately on delivery. Moreover, both the agreement to sell and the delivery took place in Indiana. Those events would be adequate to sustain a[ ] tax by Indiana.'

*Id.* at 311–12 (emphasis in original). *Wood Preserving* and *International Harvester* do not discuss whether the acts of "inspection" and "acceptance" constitute adequate taxable events.

 Indiana Administrative Code title 45, rule 1–1–119(2)(b) interprets the interstate commerce exemption from gross income tax (i.e., Indiana Code § 6–2.1–3–3) for which a judicially created body of law exists. If a regulation conflicts with a case law interpretation, little weight is afforded the regulation. *Bethlehem Steel Corp. v. Indiana Dep't of State Revenue*, 597 N.E.2d 1327, 1335 (Ind.Tax Ct.1992) (citation omitted). Additionally, an administrative interpretation that is incorrect is entitled to no weight. *Id.* at 1335–36. Therefore, to have force, 45 IAC 1–1–119(2)(b) must be consistent with the relevant case law. To the extent that 45 IAC 1–1–119(2)(b) exceeds the scope of *Wood Preserving* and *International Harvester*, it is invalid.

The Department counters, however, that while "[p]hysical delivery in Indiana of goods sold to an out-of-state purchaser is an adequate taxable event, [it is] not the only event adequate to make a transaction local." (Resp't Br. at 8.) "[*Wood Preserv-*

*ing* and *International Harvester*] dealt only with the effect of in-state delivery to out-of-state purchasers ... because in-state delivery was the question raised by those specific facts." (Resp't Br. at 8.) "Nothing in [those cases] suggests that in-state delivery is the only in-state event adequate to making a transaction taxable; it is only one example of such an event."[5] (Resp't Br. at 10 (footnote added).) The Department's argument, however, ignores the very meaning of, and relationship between, the acts of "inspection," "acceptance," and "delivery."

Pursuant to Indiana's Uniform Commercial Code (UCC),[6] the sequence of events in a "typical" sales transaction is: 1) delivery; 2) inspection; and 3) acceptance. For example, "[t]ender of delivery requires that the seller put and hold conforming goods at the buyer's disposition and give the buyer any notification reasonably necessary to enable him to take delivery." IND.CODE ANN. § 26–1–2–503(1) (West 1995). "Tender of delivery is a condition to the buyer's duty to accept the goods and, unless otherwise agreed, to his duty to pay for them. Tender entitles the seller to acceptance of the goods and to payment according to the contract." IND.CODE ANN. § 26–1–2–507(1) (West 1995).

Once delivery of goods has been tendered, a buyer has a right to inspect those goods. Indeed:

> Unless otherwise agreed ... where goods are tendered or delivered or identified to the contract for sale, the buyer has a right before payment or acceptance to inspect them at any reasonable place and time and in any reasonable manner. When the seller is required or authorized to send the goods to the buyer, the inspection may be after their arrival.

IND.CODE ANN. § 26–1–2–513(1) (West 1995). Finally, "acceptance" occurs when, "after a reasonable opportunity to inspect the goods [the buyer] signifies to the seller that the goods are conforming or that he will take or retain them in spite of their nonconformity[.]" IND.CODE ANN. § 26–1–2–606(1)(a) (West 1995).

The Department claims that Webb tendered delivery of the veneer in Edinburgh when it set it aside for the Foreign Customers to inspect. (*See* Resp't Br. at 14.) The Department argues that after Webb's Foreign Customers had a reasonable opportunity to inspect the veneer, they accepted it by "indicat[ing] to Webb that the goods conformed to the purchase agreement because the Foreign Customers com-

---

**5.** To this end, the Department has cited to the 1943 holding by the Indiana Supreme Court that a sales transaction was completed in Indiana upon the passage of title. *Dep't of Treasury v. Globe–Bosse–World Furniture Corp.*, 221 Ind. 201, 46 N.E.2d 830, 831 (1943). In *Globe–Bosse*, an Indiana manufacturer sold goods to a purchaser and then held the goods in its Indiana warehouse until the purchaser instructed it to ship the goods to its own out-of-state customers. *Id.* As the high court explained, these events did not transform a local transaction into an interstate sale because the sale was deemed completed when the purchaser paid the manufacturer: at that point, the goods became the property of the purchaser (i.e., the purchaser took title in the

goods and insured them in its own name). Consequently, despite the fact that the purchaser was not in physical possession of the goods, "a complete sale, delivery, and transfer of title was accomplished ... within the State of Indiana." *Id.* In essence, the court held that given the case's fact pattern, transfer of title and delivery occurred simultaneously, if not being one in the same. *See id.*

**6.** This Court often looks to Indiana's Uniform Commercial Code (UCC) for guidance in interpreting tax laws. *See Mynsberge v. Dep't of State Revenue*, 716 N.E.2d 629, 637 n. 13 (Ind. Tax Ct.1999).

pleted [s]ales [a]greements for the veneer they selected." (*See* Resp't Br. at 13.)

The Department is trying to put square pegs into round holes. Indeed, the Department is taking the sequence of events in this case and attempting to fit them into the sequential mold of "delivery," "inspection," and "acceptance." For instance, when Webb presented the veneer to the Foreign Customers upon their arrival in Edinburgh, it was not tendering delivery, as the Department claims. Indeed, Indiana Code § 26–1–2–503 provides the tender of delivery is made *pursuant to the provisions of the applicable sales agreement.* A.I.C. § 26–1–2–503(1) (emphasis added). At this point in time, however, no sales agreements yet existed between Webb and its Foreign Customers.

In turn, when the Foreign Customers viewed Webb's veneer, they were not inspecting the veneer as the Department claims. Rather, the Foreign Customers were merely "examining" the veneer. *See* A.I.C. § 26–1–2–513 (at Official Comment 9 (providing that "[i]nspection ... has to do with the buyer's check-up on whether the seller's performance is in accordance with a contract previously made and is not to be confused with the 'examination' of the goods or of a sample or model of them at the time of contracting")). *See also Associated Milk Producers, Inc. v. Indiana Dep't of State Revenue*, 534 N.E.2d 715, 718 (Ind.1989) (stating that inspection, which is merely a right of the buyer to determine whether the goods conform to the contract, may be exercised at the time of delivery, upon arrival of the goods, or later if the parties so agree).

Finally, when the Foreign Customers signed the sales agreements, they were not "accepting" the veneer. Rather, the parties were "contracting," or agreeing to, the terms of each party's performance or conduct in order to carry out the sale. As part of that contract, Webb was required to deliver conforming veneer to a designated destination outside Indiana.

The determination of whether certain activities constitute local transactions or interstate commerce "must be made on a case by case basis." *Indiana Dep't of State Revenue v. Brown Boveri Corp.*, 439 N.E.2d 561, 564 (Ind.1982) (internal quotation and citation omitted). "[T]he determining factor in deciding what activity constitutes interstate commerce is whether the activities in Indiana are so intrinsically related to and inherently a part of the interstate sale that it is seen as one continuing transaction." *Id. See also Ind. Dep't of State Revenue v. Frank Purcell Walnut Lumber Co.*, 152 Ind.App. 122, 282 N.E.2d 336, 343 (1972).

The facts in this case reveal that the sales at issue are interstate transactions. Indeed, the overall interstate character of these transactions—the sale of veneer to customers located outside of Indiana, the transportation and delivery of the veneer to a destination outside Indiana, the inspection and acceptance of that veneer outside Indiana—outweigh the local activities. Accordingly, the Department erred in finding that the sales at issue were local transactions subject to Indiana's gross income tax.

## CONCLUSION

For the above stated reasons, the Court GRANTS summary judgment in favor of Webb and DENIES summary judgment to the Department.